# UNITED STATES DISTRICT COURT
# DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| NIAL BENTON and HUTTON GRAHAM, individually and on behalf of similarly situated persons, | * * |
| Plaintiffs, | * Civil No. _____ |
| v. | * **JURY TRIAL DEMANDED** * |
| DELI MANAGEMENT, INC. d/b/a "JASON'S DELI," | * * |
| Defendant. | |

\*\*\*\*\*\*\*\*

## COLLECTIVE ACTION COMPLAINT

Plaintiffs Nial Benton and Hutton Graham, individually and on behalf of all other similarly situated delivery drivers, for their Collective Action Complaint against Defendant, allege as follows:

1. Upon information and belief, Defendant operates approximately 158 Jason's Deli restaurants in Georgia, Alabama, Arizona, Florida, Illinois, Louisiana, Maryland, North Carolina, Pennsylvania, South Carolina, Tennessee, Texas, Virginia and Wisconsin. Defendant employs delivery drivers who use their own automobiles to deliver food to and/or provide catering services for Defendant's customers. Instead of reimbursing its delivery drivers for the reasonably

approximate costs of the business use of their vehicles, Defendant uses a flawed method to determine reimbursement rates that provides such an unreasonably low rate beneath any reasonable approximation of the expenses they incur that the delivery drivers' unreimbursed expenses cause their wages to fall below the federal minimum wage during some or all workweeks.

2. Plaintiffs Nial Benton and Hutton Graham bring this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* to recover unpaid minimum wages owed to them and similarly situated delivery drivers employed by Defendant at its Jason's Deli restaurants.

**Jurisdiction and Venue**

3. The FLSA authorizes court actions by private parties to recover damages for violation of its wage and hour provisions. Jurisdiction over Plaintiffs' FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question)

4. Venue in this District is proper under 28 U.S.C. § 1391 because Defendant operates Jason's Deli restaurants in this District and a substantial part of the events giving rise to the claim herein occurred in this District.

**Parties**

5. Defendant Deli Management, Inc. is a Texas corporation which, upon information and belief, operates a chain of approximately 158 Jason's Deli

restaurants, including restaurants located within the Atlanta Division of the Northern District of Georgia.

6. Plaintiff Nial Benton was employed by Defendant from about early 2013 to about August 2014 as a delivery driver at its Jason's Deli store in Tucker, Georgia. His consent to join form is attached hereto as "Exhibit 1."

7. Plaintiff Hutton Graham was employed by Defendant from about July 2012 to about July 2014 as a delivery driver at its Jason's Deli store in Alpharetta, Georgia. His consent to joint form is attached hereto as "Exhibit 2."

## General Allegations

### *Defendant's Business*

8. Upon information and belief, Defendant owns and operates approximately 158 Jason's Deli restaurants in Georgia, Alabama, Arizona, Florida, Illinois, Louisiana, Maryland, North Carolina, Pennsylvania, South Carolina, Tennessee, Texas, Virginia and Wisconsin.

9. Defendant employs delivery drivers who all have the same major job responsibilities: to deliver food to and/or provide catering services for its customers.

### *Defendant's Flawed Reimbursement Policy*

10. Defendant requires its delivery drivers to maintain and pay for safe, legally-operable, and insured automobiles when delivering food and providing catering services to its customers.

11. Defendant's delivery drivers incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses ("automobile expenses") while delivering food and providing catering services for the primary benefit of Defendant.

12. Defendant's delivery driver reimbursement policy reimburses delivery drivers on a per-delivery basis, but the equivalent per-mile reimbursement is far below the IRS business mileage reimbursement rate or any other reasonable approximation of the cost to own and operate a motor vehicle. This policy applies to all of Defendant's delivery drivers.

13. The result of Defendant's delivery driver reimbursement policy is a reimbursement of much less than a reasonable approximation of its delivery drivers' automobile expenses.

14. During the applicable FLSA limitations period, the IRS business mileage reimbursement rate has ranged between $.535 and $.575 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the American Automobile

Association ("AAA"), have determined that the average cost of owning and operating a sedan ranged between $.571 and $.592 per mile between 2014 and 2016 for drivers who drive a sedan approximately 15,000 miles per year. These figures represent a reasonable approximation of the average cost of owning and operating a vehicle for use in restaurant delivery and catering.

15. The driving conditions associated with the restaurant delivery and catering business cause more frequent maintenance costs, higher costs due to repairs associated with driving, and more rapid depreciation from driving as much as, and in the manner of, a delivery driver. Defendant's delivery drivers further experience lower gas mileage and higher repair costs than the average driver used to determine the average cost of owning and operating a vehicle due to the nature of the delivery and catering business, including frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures.

16. Defendant's delivery driver reimbursement policy does not reimburse its delivery drivers for even their ongoing out-of-pocket expenses, much less other costs they incur to own and operate their vehicle, and thus Defendant uniformly fails to reimburse its delivery drivers at any reasonable approximation of the cost of owning and operating their vehicles for Defendant's benefit.

17. Defendant's systematic failure to adequately reimburse automobile expenses constitutes a "kickback" to Defendant such that the hourly wages it pays to Plaintiffs and Defendant's other delivery drivers are not paid free and clear of all outstanding obligations to Defendant.

18. Defendant fails to reasonably approximate the amount of its delivery drivers' automobile expenses to such an extent that its delivery drivers' net wages are diminished beneath the federal minimum wage requirements.

19. In sum, Defendant's delivery driver reimbursement policy and methodology fail to reflect the realities of delivery drivers' automobile expenses.

### *Defendant's Failure to Reasonably Reimburse Automobile Expenses Causes Minimum Wage Violations*

20. Regardless of the precise amount of the per-mile reimbursement at any given point in time, Defendant's delivery driver reimbursement formula has resulted in an unreasonable underestimation of its delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the federal minimum wage.

21. Plaintiffs Benton and Graham were each paid $7.25 per hour during their employment with Defendant.

22. The federal minimum wage has been $7.25 per hour since July 24, 2009. http://www.dol.gov/whd/minwage/chart.htm.

23. During the applicable limitations period, Plaintiff Benton drove a 1995 Honda Accord, a 2014 Toyota Corolla and a 2014 Toyota Camry while delivering food and performing catering services for Defendant.

24. The per-delivery reimbursement rate at the store where Plaintiff Benton worked was approximately $1.50 at the end of his employment.

25. During his employment with Defendant, Plaintiff Benton experienced an average round-trip delivery distance of approximately 7 round-trip miles per delivery or catering event.

26. Thus, Defendant's average effective reimbursement rate for Plaintiff Benton was approximately $.21 per mile ($1.50 per delivery or delivery / 7 miles per delivery or catering event).

27. During Plaintiff Benton's employment with Defendant, the lowest IRS business mileage reimbursement rate was $.56 per mile, which reasonably approximates the automobile expenses incurred in performing delivering food to, and providing catering services for, Defendant's customers. Using that IRS rate as a reasonable approximation of Plaintiff Benton's automobile expenses, every mile driven on the job decreased his net wages by approximately $.35 ($.56 - $.21). Considering Plaintiff Benton's estimate of 7 average round-trip miles per catering

event or delivery, Defendant under-reimbursed him about $2.45 per catering event or delivery ($.35 x 7 miles).

28. Defendant did not ask Plaintiff Benton to track his actual automobile expenses, nor is he an expert in the field of calculating the cost of owning and operating an automobile and/or reasonable reimbursement rates. However, Plaintiff Benton's actual automobile expenses were at the very least $.33 per mile based on the true cost of owning a car calculated by Edmunds.com for comparable vehicles and based on driving 15,000 miles per year. Using even this conservative under-estimate of Plaintiff Benton's actual expenses, as opposed to the applicable IRS rate, every mile driven on the job decreased his net wages by about $.14 ($.35 - $.21), or about $.98 ($.14 x 7 miles) per catering event or delivery.

29. During his employment by Defendant, Plaintiff Benton typically averaged approximately one catering event or delivery per hour.

30. Thus, depending on whether Defendant's reimbursement rate to the IRS rate or to a conservative under-estimate of Plaintiff Benton's actual expenses, Plaintiff Benton consistently "kicked back" to Defendant between approximately $.98 and $2.45 per hour, for an effective hourly wage rate of about $4.80 ($7.25 per hour - $2.45 kickback) to $6.27 ($7.25 per hour - $.98 kickback).

31. During the applicable limitations period, Plaintiff Graham drove a 2002 Nissan Maxima and a 2012 Ford Focus while delivering food and performing catering services for Defendant.

32. The per-delivery reimbursement rate at the store where Plaintiff Graham worked was approximately $1.50 at the end of his employment.

33. During his employment with Defendant, Plaintiff Graham experienced an average round-trip delivery distance of approximately 7 round-trip miles per delivery or catering event.

34. Thus, Defendant's average effective reimbursement rate for Plaintiff Graham was approximately $.19 per mile ($1.25 per catering event or delivery / 7 miles per catering event or delivery).

35. During Plaintiff Graham's employment by Defendant and the applicable recovery period, the lowest IRS business mileage reimbursement rate was $.56 per mile, which reasonably approximates the automobile expenses incurred in delivering food to, and providing catering services for, Defendant's customers. Using that IRS rate as a reasonable approximation of Plaintiff Graham's automobile expenses, every mile driven on the job decreased his net wages by approximately $.37 ($.56 - $.19). Considering Plaintiff Graham's estimate of 7 average round-trip miles per delivery

or catering event, Defendant under-reimbursed him about $2.59 per delivery or catering event ($.37 x 7 miles).

36. Defendant did not ask Plaintiff Graham to track his actual automobile expenses, nor is he an expert in the field of calculating the cost of owning and operating an automobile and/or reasonable reimbursement rates. However, Plaintiff Graham's actual automobile expenses were at the very least $.32 per mile based on the true cost of owning a car calculated by Edmunds.com for comparable vehicles and based on driving 15,000 miles per year. Using even this conservative under-estimate of Plaintiff Graham's actual expenses, as opposed to the applicable IRS rate, every mile driven on the job decreased his net wages by about $.13 ($.32 - $.19), or about $.91 ($.13 x 7 miles) per delivery or catering event.

37. During his employment by Defendant, Plaintiff Graham typically averaged at least one delivery or catering event per hour.

38. Thus, depending on whether Defendant's reimbursement rate is compared to the IRS rate or to a conservative under-estimate of Plaintiff Graham's actual expenses, Plaintiff Graham consistently "kicked back" to Defendant between approximately $.91 and $2.59 per hour, for an effective hourly wage rate of about $4.66 ($7.25 per hour - $2.59 kickback) to $6.34 ($7.25 per hour - $.91 kickback).

39. All of Defendant's delivery drivers had similar experiences to those of Plaintiffs. They were subject to the same reimbursement policy; received the same reimbursements; incurred similar automobile expenses; completed deliveries and/or drives to catering events of similar distances and at similar frequencies; and were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

40. Because Defendant paid its delivery drivers a gross hourly wage at or very close to the federal minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendant an amount sufficient to cause minimum wage violations.

41. While the amount of Defendant's actual reimbursements per catering event or delivery may vary over time, Defendant is relying on the same flawed policy and methodology with respect to all delivery drivers at all of its Jason's Deli restaurants. Thus, although reimbursement amounts may differ somewhat by time, the amounts of under-reimbursements relative to automobile costs incurred are consistent between time.

42. Defendant's low reimbursement rates were a frequent complaint of at least some of Defendant's delivery drivers, including Plaintiffs, yet Defendant continued

to reimburse at a rate much less than any reasonable approximation of delivery drivers' automobile expenses.

43. The net effect of Defendant's flawed reimbursement policy is that it willfully fails to pay the federal minimum wage to its delivery drivers. Defendant thereby enjoys ill-gained profits at the expense of its employees.

**Collective Action Allegations**

44. Plaintiffs bring the FLSA claim as an "opt-in" collective action on behalf of similarly situated delivery drivers pursuant to 29 U.S.C. § 216(b).

45. The FLSA claims may be pursued by those who opt-in to this case under 29 U.S.C. § 216(b).

46. Plaintiffs, individually and on behalf of other similarly situated employees, seek relief on a collective basis challenging Defendant's practice of failing to pay delivery drivers federal minimum wage. The number and identity of other plaintiffs yet to opt-in may be ascertained from Defendant's records, and potential opt-in plaintiffs may be notified of the pendency of this action via mail.

47. Plaintiffs and all of Defendant's delivery drivers are similarly situated in that:
   a. They have worked as delivery drivers for Defendant delivering food to and/or providing catering services for Defendant's customers;

b. They have delivered food to and/or provided catering services for Defendant's customers using automobiles not owned or maintained by Defendant;

c. Defendant required them to maintain these automobiles in a safe, legally-operable, and insured condition;

d. They incurred costs for automobile expenses while delivering food and/or providing catering services for the primary benefit of Defendant;

e. They were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f. They were subject to the same pay policies and practices of Defendant;

g. They were subject to the same delivery driver reimbursement policy and amounts that under-estimate automobile expenses per mile, and thereby systematically deprived them of reasonably approximate reimbursements resulting in wages below the federal minimum wage in some or all workweeks;

h. They were reimbursed the same amount per delivery or catering event; and

i. They were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

**Count I: Violation of the Fair Labor Standards Act of 1938**

48. Plaintiffs reassert and re-allege the allegations set forth above.

49. At all relevant times, Plaintiffs and all other similarly situated delivery drivers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

50. Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations, but none of the FLSA exemptions apply to Plaintiffs or other similarly situated delivery drivers.

51. The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a).

52. Defendant is subject to the FLSA's minimum wage requirements because it is an enterprise engaged in interstate commerce, and its employees are engaged in commerce.

53. Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

54. As alleged herein, Defendant has reimbursed delivery drivers less than the reasonably approximate amount of their automobile expenses to such an extent that it diminishes these employees' wages beneath the federal minimum wage.

55. Defendant knew or should have known that its pay and reimbursement policies, practices and methodology result in failure to compensate delivery drivers at the federal minimum wage.

56. Defendant, pursuant to its policy and practice, violated the FLSA by refusing and failing to pay federal minimum wage to Plaintiffs and other similarly situated employees.

57. Plaintiffs and all similarly situated delivery drivers are victims of a uniform and employer-based compensation and reimbursement policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all delivery driver employees in Defendant's restaurants.

58. Plaintiffs and all similarly situated employees are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard for, whether its conduct was unlawful.

59. Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant lacked good faith and reasonable grounds to believe its actions and omissions complied with the FLSA, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

60. As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendant from Plaintiffs and all similarly situated employees. Accordingly, Defendant is liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiffs and all similarly situated delivery drivers demand judgment against Defendant and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

**Demand for Jury Trial**

Plaintiffs hereby request a trial by jury of all issues triable by jury.

Dated: January 25, 2017

Respectfully submitted,

THE WEINER LAW FIRM

*/s/ Andrew Weiner*_____
Andrew Weiner (Ga Bar #808278)
3525 Piedmont Road
7 Piedmont Center, 3rd Floor
Atlanta, Georgia 30305
Telephone: (404) 254-0842
Facsimile: (866) 800-1482
aw@atlantaemployeelawyer.com

PAUL McINNES LLP
Jack D. McInnes
(*pro hac vice* motion to be filed)
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone (816) 984-8100
Facsimile (816) 984-8101
mcinnes@paulmcinnes.com

and

WEINHAUS & POTASHNICK
Mark Potashnick
(*pro hac vice* motion to be filed)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone (314) 997-9150
Facsimile (314) 997-9170
markp@wp-attorneys.com

**ATTORNEYS FOR PLAINTIFFS**