IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NIAL BENTON and HUTTON
GRAHAM, individually and on
behalf of similarly situated
persons,

     Plaintiffs,

v.

DELI MANAGEMENT, INC.
d/b/a JASON'S DELI,

     Defendant.

CIVIL ACTION FILE

NO. 1:17-cv-296-TCB

# **O R D E R**

## I.  **Background**

Plaintiffs compose a conditionally certified class of Jason's Deli delivery drivers. As a condition of their employment, Jason's Deli requires that they provide an operable, safe, and legal vehicle in which to make their deliveries. In this case Plaintiffs allege that Jason's Deli violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, because they incurred unreimbursed vehicle-related expenses on Jason's Deli's

1

behalf, the cost of which drove their wages below the FLSA-mandated minimum. A more detailed factual background may be found in Judge Duffey's December 18, 2017 order [29] conditionally certifying the class.

Since certification, numerous plaintiffs have consented to join the class. The case also proceeded to discovery, which ended on November 1, 2018. Following discovery, Jason's Deli argues that the 29 U.S.C. § 216(b) collective action can no longer be maintained. In addition, the parties have filed cross motions to exclude the other's experts and cross-motions for summary judgment. Accordingly, the Court's order today resolves the following pending motions:

- Jason's Deli's motion [94] for decertification of the collective action;

- Jason's Deli's motion [95] for summary judgment;

- Jason's Deli's motion [103] to exclude Paul T. Lauria's expert testimony and report;

- Plaintiffs' motion [92] for partial summary judgment; and

- Plaintiffs' motion [97] to exclude Dr. Janet Thornton's expert testimony and report.[1]

## II. Discussion

The resolution of the pending motion involves untangling interdependent issues. In order to best explain its decision, the Court begins first by settling the questions of law raised in Jason Deli's motion for summary judgment and Plaintiffs' motion for partial summary judgment. The Court will then proceed to Jason's Deli's *Daubert* motion to exclude the testimony of Plaintiffs' expert, Paul Lauria, and Plaintiffs' *Daubert* motion to exclude Jason's Deli's rebuttal expert, Dr. Janet Thornton. Finally, the Court resolves Jason's Deli's motion to decertify the collective-action class. The upshot is that the case will proceed as a collective action under § 216(b) of the FLSA.

### A. Summary Judgment Motions

Summary judgment is appropriate when "there is no genuine

---

[1] Also before the Court are Plaintiffs' motions [105, 119] for leave to file excess pages, Plaintiffs' motion [93] for leave to file, and Jason's Deli's motions [112, 123] for leave to file excess pages. These motions are granted. Additionally, the Court denies as moot Plaintiffs' motion [125] to file a surreply, as it did not need to reach the issues raised therein to resolve the original motion.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making this determination, however, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* at 1438 (citing *Celotex Corp.*, 477

U.S. at 331). The second is to show that "there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. *Id.* At this point, the nonmoving party must "'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 324).

The Court considers the parties' motions for summary judgment in turn.

### 1.    Jason's Deli's Motion for Summary Judgment

Jason's Deli moves for summary judgment first, and most simply, it moves for summary judgment as to six individual opt-in plaintiffs based on the expiration of the statute of limitations. Second, it argues that it cannot be liable for a violation of the FLSA's "anti-kickback rule"

because Plaintiffs are not entitled to a reimbursement for some of the expenses they claim.

### a.     Statute of Limitations

Plaintiffs have conceded that the following Plaintiffs' claims are barred by the applicable statute of limitations: Alex Alonso, Joyce Boyer, Alan Kirguev, Mikayla Luksha, Larry Powell, Shiaisa Respers. To the extent these Plaintiffs' opt-ins have not already been withdrawn, the Court will grant summary judgment in favor of Jason's Deli and against them.

### b.     Reimbursable Expenses

Jason's Deli's next argument is divisible into the following subparts. First, Jason's Deli contends that Plaintiffs are not entitled to reimbursement for certain fixed costs associated with owning their vehicles. Second, it contends that Plaintiffs cannot claim reimbursement for an estimate of costs (whether fixed or otherwise) when their actual costs either differ from the estimate or were not actually incurred by Plaintiffs (e.g., because someone else paid for them). These are taken in turn.

Plaintiffs' claims are based on a regulation under the FLSA referred to as the "anti-kickback rule," 29 C.F.R. § 531.35, which provides as follows:

> "[W]ages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the [FLSA] will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. . . . For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

The parties' dispute turns in part on whether Jason's Deli was required to reimburse Plaintiffs for fixed costs such as insurance and registration. In other words, Plaintiffs argue that paying these fixed costs resulted in a "kick-back" of at least a portion of their wages to Jason's Deli (and to the extent it caused the wages to fall below the minimum—$7.25 per hour—the arrangement violates the FLSA). Jason's Deli contends that it should not be required to reimburse fixed costs associated with Plaintiffs' vehicles.

The Court need not (and does not) hold that fixed costs categorically should be borne by employers of delivery drivers. Here, however, it agrees with Plaintiffs to the extent that they may include a portion of the fixed costs associated with the ownership of their vehicles because having a vehicle is a condition of Plaintiffs' employment with Jason's Deli.

Congress has determined that when calculating wages due, an employer may include the "reasonable cost" of "board, lodging, or other facilities" to satisfy its obligation to pay the minimum wage. 29 U.S.C. § 203(m). Various regulations have been promulgated to interpret § 203(m), one of which is § 531.35, at issue here. As set forth above, § 531.35 explains what it means for a wage to be "paid" under the FLSA: a wage is not considered "paid" if the employer causes a portion of or all of the employee's wage to be expended in the form of a "kick-back" that is for the employer's benefit.

Central to the parties' argument is how a "kick-back" should be defined. Jason's Deli argues that the Court should focus on whether an expense is incurred "primarily" for the employer's benefit, for which it

cites cases in the Eleventh Circuit and other regulations referenced by

§ 531.35. Plaintiffs, also citing Eleventh Circuit cases and other

regulations, contend that the Court should focus on whether an

employee bearing a cost "tends to shift" that cost to the employee when

it should in fact be borne by the employer. Because the parties quarrel

over the interpretation of the case law on point, the Court begins its

analysis with the regulations themselves before reviewing the cases

interpreting them.

Section 531.35 itself does not define "kick-back." Though it does

imply that a kick-back is an expense incurred "for the employer's

benefit . . . ." 29 C.F.R. § 531.35. The regulation only contains the one

example of a kick-back:

> [I]f it is a requirement of the employer that the employee
> must provide tools of the trade which will be used in or are
> specifically required for the performance of the employer's
> particular work, there would be a violation of the [FLSA] in
> any workweek when the cost of such tools . . . cuts into the
> minimum or overtime wages to be paid him under the
> [FLSA].

*Id.* The Court pauses here to note that a plain reading of the regulation

would support Plaintiffs' contention that requiring them to cover the

costs of their vehicles that are used for Jason's Deli's business constitute an illegal kickback, insofar as they are required to cover the cost of these expenses, and that cost drives their wages below the FLSA minimum. That is simply because such expenses are incidental to having a safe, operable, and legal vehicle to deliver sandwiches, which Jason's Deli requires for its business; that is, it is a tool of the delivery trade that Jason's Deli requires for its own benefit.

Even though a plain reading of the regulation would lead to the conclusion that such expenses should be reimbursed, the Court considers other, related regulations in its analysis because § 531.35 cross-references to other regulations, all of which are promulgated to provide further context for § 203(m)'s definition of a "wage" under the FLSA.[2] The first cross-reference is to § 531.32(c), which further interprets § 531.3(d)(1), which itself interprets § 203(m) as it relates to

---

[2] The parties do not dispute that the regulations interpreting the FLSA are entitled to deference in this case. *See Sullivan v. PJ United, Inc.*, No. 7:13-cv-1275-LSC, 2017 WL 10575860, at *6 (N.D. Ala. Oct. 16, 2017) [hereinafter, *Sullivan I*].

an employer's taking a wage credit for furnishing "other facilities"[3] for

its employees' benefit. Section 531.32(c) considers expenses to be the

employer's responsibility (because they cannot be taken as wage credits)

when they are incurred "primarily for the benefit or convenience of the

employer . . . ." *Id.* § 531.32(c).

---

[3] These "other facilities" are things that an employer may furnish to an employee, and then attempt to credit the reasonable cost thereof as part of the minimum wage owed to that employee. These regulations make clear that the cost of these items may not, however, be counted as a minimum-wage credit when they are incurred "primarily for the benefit or convenience of the employer." 29 C.F.R. § 531.3(d)(1); *see also id.* § 531.32(c) ("[T]he cost of furnishing 'facilities' which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages."). Even though this is a slightly different situation than the kick-back, the regulations interpreting "other facilities" (such as § 531.3) and "wages" (such as § 531.35) demonstrate a commonality of purpose, namely, to prevent an employer from shifting its cost of business to its employees, whether through crafty ledger work in the former or terms of employment in the latter. Indeed, "there is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear." *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1236 (11th Cir. 2002).

Thus, the Court finds these cross references helpful insofar as they demonstrate a unity of purpose among the regulations to prevent cost-shifting. They are less helpful for ascertaining a clear standard for what types of expenses may or may not be shifted, as they tend to use slightly different language and rely largely on ad hoc examples of legal and illegal arrangements. Because the standards vary from regulation to regulation, the Court must consider as much the structure and purpose of the regulations as the language used, with the disappointing result that no one standard wins the day and provides clarity of meaning.

Section 531.32(c) also cross-references other regulations, such as § 531.3, for examples of expenses whose cost may be taken as a wage credit. Section 531.3(d)(1) forbids wage credits when the expenses are "primarily for the benefit or convenience of the employer." *See also id.* § 531.3(d)(2). Reminiscent of § 531.35 (the anti-kick-back rule), this section also lists as an example of expenses that cannot be taken as a wage credit "[t]ools of the trade and other materials and services incidental to carrying on the employer's business[.]" *Id.* § 531.3(d)(2).

In this vein, § 531.32(c) cross-references § 778.217 "for a discussion of reimbursement for expenses such as 'supper money,' 'travel expenses,' etc." *Id.* § 531.32(c). Section 778.217(a) generally requires that expenses be reimbursed "[w]here an employee incurs expenses on his employer's behalf or where he is required to expend sums solely by reason of action taken for the convenience of his employer . . . ." It further provides, "The expenses for which reimbursement is made must in order to merit exclusion from [minimum-wage rate], be expenses incurred by the employee on the employer's behalf or for his benefit or convenience." *Id.* § 778.217(d).

Section 778.217(d) also provides a counter-example, stating that an employer need not reimburse an "employee for expenses normally incurred by the employee for his own benefit" and that "[a]n employee normally incurs expenses in traveling to and from work, buying lunch, paying rent, and the like." *Id.*

After reviewing the constellation of regulations above, the Court is again left a little at sea if it must depend solely on the regulations' text. No one clear standard prevails. Some of the cross-referenced regulations favor Jason's Deli's proposed "primarily-benefits-the-employer" standard, while the purpose and structure, as well as the use of the slightly less-restrictive phrase "benefits the employer" (i.e., without a "primarily" qualifier) to describe reimbursable expenses, supports Plaintiffs' contention that the focus is more on who should bear the business expense as between the employer and employee.

Plaintiffs rely on cases that have described reimbursable expenses under § 531.35 as being those that "tend[] to shift part of the employer's business expense to the employee[]." *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972). *Mayhue's* held that an

employment agreement that required the defendant/employer's cashiers to repay the employer for shortages in the case drawer at the end of the day violated the FLSA. The holding required answering whether such an expense when borne by the employee resulted in an illegal "kick-back" under § 531.35. The Fifth Circuit concluded that it did.

This holding was reaffirmed in *Ramos-Barrientos v. Bland*, 661 F.3d 587, 594 (11th Cir. 2011), which stated that § 531.35 "prohibits any arrangement that 'tend[s] to shift part of the employer's business expense to the employees . . . to the extent that it reduce[s] any employee's wage below the statutory minimum.'" (alterations in original) (quoting *Mayhue's*, 464 F.2d at 1199). However, as Jason's Deli points out, this is likely dicta because *Ramos* largely focused on whether the costs borne by those employees were incurred "primarily for the benefit" of Jason's Deli, rather than whether the expense resulted in illegal cost-shifting. *See id.* at 596.

After reviewing both of these cases, and careful consideration of the regulations, the Court remains convinced that no one test ultimately decides the issue of what constitutes a kick-back. The

Eleventh Circuit has certainly not so held, as it tends to treat both of the parties' proposed standards together. When faced with a kick-back claim then, the Court inquires first into the language of the anti-kick-back rule, which simply states that a kick-back is one that is "for the employer's benefit." 29 C.F.R. § 531.35. If it is, the Court references and analogizes from the examples provided in other regulations and decided cases.

This conclusion is supported by the continuing viability of *Mayhue's*, as well as the fact that the regulations themselves do not exclusively rely on a "primarily" qualifier to determine whether an expense must or must not be reimbursed. *Compare id.* § 531.35 ("for the employer's benefit") *and id.* § 778.217(a) "[w]here an employee incurs expenses *on his employer's behalf* or where he is required to expend sums solely by reason of action taken for the convenience of his employer" (emphasis added)) *with id.* § 531.3 ("cost of furnishing 'facilities' . . . to be *primarily for the benefit* or convenience of the employer will not be recognized as reasonable" (emphasis added)) *and id.* § 531.32(c) (describing items "which have been held to be *primarily*

*for the benefit* or convenience of the employer and are not therefore to be considered 'facilities' within the meaning of [§ 203(m)]" (emphasis added)).

In sum, both parties are right about the standards that apply; they co-exist. The regulations do not elevate form over substance in such a way that one test prevails; the question is really about the nature of the expenses themselves and whether they are of the type that should be borne by the employer rather than the employee. Applying this, the Court concludes that the fixed costs claimed by Plaintiffs were reimbursable at least in part.

The Court rejects Jason's Deli contention that it was not required to reimburse Plaintiffs because they would pay registration and insurance whether they worked for Jason's Deli or not. Its argument is essentially that these are the non-reimbursable "normal everyday expenses" discussed in § 778.217(d).

The Court disagrees. To begin, the Court reiterates its conclusion that the regulations provide more of a framework for analysis than a hard and fast set of rules about which expenses are/are not to be

reimbursed under the FLSA. And though it is true that Plaintiffs might indeed have had the same insurance[4] and registration costs regardless of their employment, the Court holds that Jason's Deli should at least bear a reasonable portion of the costs incurred by Plaintiffs to operate their vehicles. As noted above, these expenses are indeed incurred "for [Jason's Deli's] benefit." *Id.* § 531.35. Moreover, Plaintiffs' vehicles are a "tool of the trade" when they are used for Jason's Deli's business. *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594, at *4 (S.D. Ohio Nov. 6, 2018) ("Because the vehicles owned by the delivery drivers are considered 'tools of the trade,' 29 C.F.R. § 531.35, and required by [the company] as a condition of being hired as a delivery driver, there needed to be an adequate reimbursement rate . . . in order to avoid a decrease in the minimum wage and overtime paid.").

---

[4] Jason's Deli admits that Plaintiffs' mileage increases as a result of their employment as delivery drivers. And insurance rates can increase with the number of miles driven per year because the risks associated with driving (such as accidents, wear and tear, etc.) are greater when a driver drives more miles in a year. Thus, the Court is not convinced that insurance rates are actually "fixed" costs.

Jason's Deli's attempts to analogize to the regulations' requirements that employers reimburse employees for the "cost of uniforms and of their laundering, where the nature of the business requires the employee to wear a uniform," *id.* § 531.3(d)(1); but if the employee is required only to wear an outfit consisting of ordinary street clothes, no reimbursement is required. Jason's Deli argues that Plaintiffs' fixed vehicle costs are like "ordinary street clothes," and therefore, no reimbursement is required.

The Court is not convinced that in this situation vehicle expenses should be analogized to ordinary street clothes. In fact, the analogy is likely inappropriate (and unnecessary) when other examples of reimbursable expenses, such as "tools of the trade," are more on point. *See id.* § 531.3(d)(2) (discussing as separate expense categories tools of the trade and uniforms).

Moreover, there is a nuanced distinction between ordinary street clothes and the vehicle expenses here. In the absence of an employee, an employer would not need to buy street clothes for its business to operate. Thus, street clothes are incidental first to the needs of the

employee rather than the employer. An employer would need ordinary street clothes only to the extent they were necessary to have employees show up in decent clothing at work. Contrastingly, Jason's Deli's need for a vehicle is directly incidental to its business. If the employee did not provide these vehicles, Jason's Deli would have to purchase (or lease) them itself in order to run its business.[5]

In light of the foregoing considerations, and consistent with the purpose of the FLSA and implementing regulations, Jason's Deli should not be permitted to shift its incidental business costs of owning a vehicle to its employees simply because they might have incurred them otherwise. *See Mayhue's*, 464 F.2d at 1199 (finding invalid an employment agreement that "tended to shift part of the employer's business to the employees and was illegal to the extent that it reduced an employee's wage below the statutory minimum"). This is especially

---

[5] The Court also finds persuasive the fact that the Department of Labor considers an employer's reimbursement obligation satisfied when it uses the IRS reimbursement as a reasonable approximation of expenses. *See* DEP'T OF LABOR, FIELD OPERATIONS HANDBOOK § 30c15 (2016). The IRS formula considers factors such as insurance and registration. *See Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 730 (E.D. Mo. 2015) (noting the components of the IRS reimbursement) [hereinafter, *Perrin I*].

true where having a vehicle is "essential for the . . . employment relationship to come to fruition." *Rivera v. Peri & Sons Farm, Inc.*, 735 F.3d 892, 898 (9th Cir. 2018). Accordingly, the Court holds that fixed costs of insurance and vehicle registration may result in an illegal kickback to the employer, violating 29 C.F.R. § 531.35.

Now the Court proceeds to Jason's Deli's argument that summary judgment is appropriate because many Plaintiffs did not *actually incur* the costs of vehicle registration and insurance. Jason's Deli points out that some of the Plaintiffs' vehicle registration and insurance is paid for by some Plaintiff's families.

The Court disagrees with this argument as a matter of law. The anti-kick-back rule is almost exclusively focused on the benefit *to the employer*, rather than the employee. To the extent the benefit to the employee is considered, it is simply to determine in which direction the benefit from the expense flows as between the employer and the employee.

Other courts have rejected similar arguments because even if the employee provides a "tool" (here, insurance) for a job that it receives as

a gift (because a parent pays for it), the employer is still avoiding a cost it would have incurred but for the employee paying that cost. The employee is essentially providing a gift to the employer for the employer's benefit. Consistent with the FLSA's purpose to avoid cost-shifting, the employer should be obligated to cover a reasonable amount of such expenses to the extent it benefits from their use" (i.e., proportional to the miles Plaintiffs drive on its behalf). *See* [110-5] at 3 (hearing transcript from *Sullivan v. PJ United, Inc.*, No. 7:13-cv-1275-LSC (N.D Ala. Nov. 16, 2017)).

For the foregoing reasons, the Court will grant in part and deny in part Jason's Deli's motion for summary judgment.

### 2.   Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs have also moved for summary judgment on several grounds. These are addressed in turn.

First, Plaintiffs move for summary judgment as to whether they may prove their claims through estimates of their vehicle costs rather than a showing of actual costs. The Court agrees with those courts that have concluded they can. *See, e.g.*, *Wass v. NPC Int'l, Inc.*, No. 09-2254-

JWL, 2010 WL 7762621, at *3 (D. Kan. Sep. 1, 2010) ("FLSA plaintiffs could rely on estimates instead of actual figures if evidence allowed such a reasonable inference[.]" (citing *Robinson v. Food Serv. of Belton, Inc.*, 415 F. Supp. 2d 1232, 1235 (D. Kan. 2005)); *Perrin v. Papa John's Int'l, Inc.*, 818 F. Supp. 2d 1146, 1149–50 (E.D. Mo. 2010) ("It is not implausible to suggest that drivers may be able to estimate their expenses without knowing their actual expenses incurred." (quoting *Wass*, 2010 WL 7762621, at *3)) [hereinafter *Perrin II*].

Nothing in the FLSA or regulations requires proof of actual expenses; in fact, the regulations suggest the opposite by their allowance for employers to pay employees a "reasonable estimate" of the employee's expenses to avoid FLSA liability. *See* 29 C.F.R. § 778.217(c) ("It should be noted that only the actual *or reasonably approximate* amount of the expense is excludable from the regular rate." (emphasis added)); *see also id.* § 778.217(a)(3) (referring to "actual *or reasonably approximate* amount expended by an employee" (emphasis added)); *id.* § 778.217(a)(5) (same).

Jason's Deli does not really dispute this conclusion. Instead, it argues that Plaintiffs' estimates of the expenses are unreasonable because they are not representative of their actual expenses. To the extent that this argument is based on the challenges to Lauria's testimony, this argument is rejected for the reasons stated in the Court's analysis of the *Daubert* motion. Because the Court is allowing Lauria's expert testimony in this case, it finds that Plaintiffs have at least raised a genuine dispute about the material fact of whether the estimate of their expenses is reasonable under the FLSA. Therefore, the Court will "leave to the jury the determination of whether [Jason's Deli'] reimbursement rate reasonably approximated Plaintiffs' vehicle expenses." *Perrin I*, 114 F. Supp. 3d at 722.

Plaintiffs also make a great deal out of whether Jason's Deli can claim a tip credit in this case. As Jason's Deli admits, it is not claiming a tip credit. Therefore, summary judgment is denied as to this claim.

Plaintiffs also move for summary judgment as to Jason's Deli's fourth affirmative defense: the "de minimis" defense. Here, Jason's Deli

argues that some of the Plaintiffs' minimum wage damages are so miniscule that they should not be held liable for them under the FLSA.

This defense is grounded in 29 C.F.R. § 785.47, which states that "insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are de minimis." However, the Court agrees with Plaintiffs that in this instance the de minimis defense has no application. Jason's Deli raises it as a defense "for their possible failure to pay an hourly rate at or above the federal minimum wage." *Sullivan v. PJ United, Inc.*, 362 F. Supp. 3d 1139, 1165 (N.D. Ala. 2018), *vacated in part on reconsideration by* Memorandum of Opinion and Order, *Sullivan v. PJ United, Inc.*, No. 7:13-cv-01275-LSC (N.D. Ala. Aug. 7, 2018), ECF No. 307.

The issue is not that Jason's Deli could not record certain amounts of de minimis time expended by Plaintiffs on their job. Rather, Jason's Deli effectively argues that Plaintiffs' wages were reduced only an insignificant amount and thus should be disregarded. There is,

24

however, no authority "to support the contention that [Jason's Deli] can escape paying shortfalls in minimum wage payments because the shortfalls are '*de minimis*.'" *Id.* (quoting *Wagner v. ABW Legacy Corp.*, No. cv-13-2245-PHX-JZB, 2016 WL 880371, at *16 (D. Ariz. Mar. 8, 2016)). Thus, the Court will grant Plaintiffs' motion for summary judgment as to Jason's Deli's de minimis defense.

Plaintiffs also move for summary judgment on Jason's Deli's "good faith" defense. Jason's Deli admits it cannot prove this defense. Accordingly, summary judgment will be granted to Plaintiffs on the issue of good faith.

Plaintiffs move for summary judgment on Jason's Deli's affirmative defenses of "lack of willfulness" and "compliance with the FLSA." [92] at 54. Summary judgment will be denied to the extent that Plaintiffs, rather than Defendants, bear the burden on this issue. *See Davila v. Menendez*, 717 F.3d 1179, 1185 ("The burden rests with the employee to 'prove by a preponderance of the evidence' that her employer acted willfully." (quoting *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162–63 (11th Cir. 2008)). Further,

willfulness is generally an issue for the jury. *See Watkins v. City of Montgomery*, 919 F. Supp. 2d 1254, 1265 n.11 (M.D. Ala. 2013) ("[T]he fact-specific inquiry as to whether such a violation was 'willful' is generally best left to the jury."); *Morrison v Quality Transps. Servs., Inc.*, 474 F. Supp. 2d 1303, 1313 (S.D. Fla. 2007) ("The issue of willfulness under § 255(a) is a question of fact for the jury not appropriate for summary disposition). Thus, summary judgment on this ground will be denied.

Plaintiffs also move for summary judgment on the grounds that "Jason's Deli admits that it has no facts to show that Plaintiffs were paid in compliance with either the FLSA or state laws." [92] at 55. Plaintiffs cite to their statement of material facts for this proposition. Jason's Deli appears to offer no response to this in their opposition to Plaintiffs' motion, but the paragraphs in the statement of material facts were subject to at least one valid objection that the statement was an improper legal conclusion. *See* [130] ¶ 88. Plaintiffs cite no law or other factual support for their contention, and without further development

by the parties, the Court cannot conclude as a matter of law that no

genuine dispute remains on this issue.

Accordingly, Plaintiffs' motion for summary judgment will be

granted in part and denied in part as stated herein.[6]

## B.   *Daubert* **Motions**

Federal Rule of Evidence 702, which governs the admissibility of

expert testimony, provides that

A witness who is qualified as an expert by knowledge, skill,
experience, training, or education may testify in the form of an
opinion or otherwise if: (a) the expert's scientific, technical, or
other specialized knowledge will help the trier of fact to
understand the evidence or to determine a fact in issue; (b) the
testimony is based on sufficient facts or data; (c) the testimony is
the product of reliable principles and methods; and (d) the expert
has reliably applied the principles and methods to the facts of the
case.

Although the rules provide the Court with only limited guidance, the

United States Supreme Court's opinion in *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), is instructive. "Unlike an

---

[6] Plaintiffs also move for summary judgment on Jason's Deli's statute of
limitations defense. But the parties agree that at least a few Plaintiffs' claims were
untimely. Moreover, the exact statute of limitations cannot be resolved until a jury
decides the issue of willfulness. Thus, summary judgment for Plaintiffs on the
statute of limitations issue is denied.

ordinary witness, . . . an expert is permitted wide latitude to offer

opinions, including those that are not based on firsthand knowledge or

observation." *Id.* at 592 (citation omitted). Trial courts therefore act as

"gatekeepers" to ensure that a proposed expert's testimony is not only

relevant, but reliable. *Id.* at 589. To that end, district courts are

"charged with screening out experts whose methods are untrustworthy

or whose expertise is irrelevant to the issue at hand." *Corwin v. Walt*

*Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007).

As a gatekeeper, the trial court should conduct a "rigorous

three-part inquiry" to determine whether

> (1) the expert is qualified to testify competently regarding
> the matters he intends to address; (2) the methodology by
> which the expert reaches his conclusions is sufficiently
> reliable as determined by the sort of inquiry mandated in
> *Daubert*; and (3) the testimony assists the trier of fact,
> through the application of scientific, technical, or
> specialized expertise, to understand the evidence or to
> determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.

1998)). Although there is inevitable overlap among the three prongs of

this analysis, trial courts must be cautious not to conflate them, and the

proponent of expert testimony bears the burden to show that *each* requirement is met. *Id.*

*Daubert* sets forth a list of factors to be considered regarding the reliability of a proposed expert's testimony. These factors include (1) whether the expert's theory can be and has been empirically tested; (2) whether the expert's theory has been subjected to peer review and publication; (3) the known or potential error rate of the expert's theory; and (4) whether the expert's theory is generally accepted in the scientific community. *Daubert*, 509 U.S. at 593–94.

These factors bear on the Court's inquiry, but do not compose a definitive checklist. *Id.* at 593. Not every factor "will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." *Frazier*, 387 F.3d at 1262. Thus, the trial court has considerable leeway to determine whether proffered expert testimony is reliable. *Id.*

Finally, the district court must assess whether the expert testimony will assist the trier of fact. Put another way, the Court must ask whether the expert testimony "concerns matters that are beyond

the understanding of the average lay person." *Id.*

The Court considers the parties' *Daubert* motions in turn.

### 1.   Jason's Deli's Motion to Exclude Paul Lauria

Plaintiffs retained Paul T. Lauria to support its contention that Jason's Deli violated the FLSA's "anti-kickback rule." Defendants move to exclude Lauria's expert testimony on all three prongs of *Daubert*. It argues that Lauria is unqualified to render his opinion, that his opinion is based on unreliable data or methodology, and that his opinion is not relevant to any disputed issues.

Lauria's opinions are generally summed up as follows:

(1)   The standard practice in his industry (fleet-management consulting) is to reimburse employees for the use of their vehicles as part of their job using an aggregate reimbursement rate.

(2)   Jason's Deli's reimbursement does not reasonably reimburse its delivery drivers because it lacks a structured method for reimbursement and because it accounts only for fuel costs, ignoring other fixed and variable costs associated with vehicle ownership.

(3)   Based on a review of a sample of Jason's Deli's delivery drivers and deliveries, there is a reasonable per-mile reimbursement rate for the markets in which Jason's Deli operates or has operated during the period relevant to this case.

The Court considers all three of Lauria's opinions in its review of the *Daubert* motion. Before doing so, however, the Court is compelled to address a threshold issue permeating the general bases for Jason's Deli's objections to Lauria's testimony. Based on the time spent in both briefing and deposition, Jason's Deli appears to assume that Lauria's testimony is appropriate only to the extent that his opinion answers whether Plaintiffs' wages were in fact reduced below the minimum.

While this is true with respect to what Plaintiffs must ultimately prove to prevail on their FLSA claims, it skips an important aspect of anti-kick-back cases. To maintain an anti-kick-back claim, Plaintiffs have an initial hurdle to clear by showing that Jason's Deli's reimbursement rate is not a "reasonable approximation" of their expenses. *See Darrow v. WKRP Mgmt., LLC*, No. 09-cv-0613-CMA-BNB, 2011 WL 2174496, at *5 (D. Colo. June 3, 2011) (examining first whether the plaintiffs first plausibly alleged that the defendant-employer unreasonably approximated their expenses under § 531.35). If it was not, then no kick-back liability occurs. If it was, however, Plaintiffs must then demonstrate that the unreasonable rate paid

caused their ultimate wages to be less than the minimum for the weeks worked.

While this issue pertains mostly to the relevance of Lauria's opinions, it also colors both Lauria's qualifications and the reliability of his methodology. For example, based on the Court's conclusion above, it finds unavailing Jason's Deli's objection to Lauria's qualifications based on the contention that he does not regularly compute whether under-reimbursement of vehicle costs reduce employee wages below legally required levels. Lauria's testimony, however, is focused on the reasonableness of Jason's Deli's reimbursement considering both the quality of the inputs in a proper reimbursement formula and the values assigned to those inputs. Thus, the Court will not reject Lauria's testimony on the basis that he considered his own professional notions of "reasonableness" or "equity," *see* [94-2] at 47:16–48:21), because they are helpful to the issue of reasonable approximation.

With this out of the way, the Court proceeds to consider Lauria's qualifications, the reliability of his methodology, and the relevance of his opinions to the issues before the Court.

### a.   Qualifications

Jason's Deli questions Lauria's ability to offer his opinions based on his expertise as a consultant for companies with employer-owned fleet management rather than employee-owned fleet management. Jason's Deli also argues that Lauria should not testify because he lacks experience in consulting in the restaurant industry.

Lauria's opinions are based on his experience reviewing data and advising companies as to whether it makes more business sense for an employer to reimburse its employees for the use of their own vehicles or for the employers to maintain their own fleet of vehicles for the employees' use. Defendants do not seriously object to Lauria's credentials or vast experience consulting with clients across the business spectrum on these issues. Lauria's experience requires him to calculate the "total cost of ownership" for a vehicle, accounting for a number of variables involved in owning and maintaining vehicles. This expertise is directly applicable to this case, in which Plaintiffs contend that they, as Jason's Deli delivery drivers, incurred a number of costs associated with owning and maintaining their vehicles for which they

were not adequately reimbursed, with the ultimate result that they (allegedly) were paid less than the minimum wage required by the FLSA.

The Court also rejects Jason's Deli's attempts to disqualify Lauria on the grounds that he does not ordinarily advise restaurant clients, but deals primarily with employer-owned fleets. Even if Plaintiffs had not put forth sufficient evidence to satisfy the Court that Lauria's vehicle-costing consulting services have in fact touched on the area of employee-owned vehicle fleets, the Court agrees with its sister district court that Lauria's "experience in the field of estimating fixed and variable vehicle costs and expenses for reimbursement purposes, whether for fleet vehicles or for employee-owned vehicles, qualifies Lauria to render the expert opinion proffered in support" of Plaintiffs' claims. *Perrin v. Papa John's Int'l, Inc.*, No. 4:09cv01335 AGF, 2013 WL 6885334, at *4 (E.D. Mo. Dec. 31, 2013) [hereinafter, *Perrin III*].

Jason's Deli also contends that Lauria lacks the statistical qualifications necessary to give the opinions he offers in this case. It contends that Lauria relies on unreliable "samples of information from

a large set of data" and that he lacks the necessary statistical training to ensure that his opinion is reliable. [103] at 11.

True, Lauria admits that he is not a statistician, and offers little reassurance about his confidence in or even knowledge of the statistical sampling methodologies used to create data he relied upon.

Nevertheless, the Court is not persuaded that exclusion under *Daubert* is appropriate in this instance. Importantly, Jason's Deli overstates the requirements of the rules regarding expert testimony. All that Rule 703 requires with respect to an expert's reliance on statistical data is that it be "of a type reasonably relied upon by experts in the particular field" in forming opinions or inferences upon the subject. FED. R. EVID. 703 advisory committee's note. Jason's Deli offers no response to Plaintiffs' contention that what Lauria relied upon in forming his opinions in this case was information of the type typically used by fleet-management consultants. To the extent that Jason's Deli critiques the survey or other data Lauria used, that is an issue of this

evidence's weight, not its admissibility. *See Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 844–45 (11th Cir. 1983).[7]

The Court also generally rejects Jason's Deli's argument to exclude because Lauria's experience was allegedly obtained through extensive testimony in litigation. Lauria has significant private-sector experience advising companies on the costs of owning and maintaining vehicles, in addition to his testifying experience. It cannot be seriously maintained that Lauria's experience came solely through litigation, even though his opinion may indeed be shaped by this experience.

---

[7] Jason's Deli cites *Increase Minority Participation by Affirmative Change Today (IMPACT) of Northwest Florida, Inc. v. Firestone*, 893 F.2d 1189, 1195 (11th Cir. 1990), which held that the district court's decision to exclude Plaintiffs' expert "on the ground that he was not a statistician or economist" was not an abuse of discretion. But the Eleventh Circuit's analysis in this respect is highly cursory. *Firestone* provides no details about exactly why the expert was precluded from testifying, only that the Court did not err by excluding the opinion. Thus, this citation does not provide a basis for the Court to evaluate whether the fact that Lauria relies on statistical evidence to form an opinion within his expertise based on unreliable data formulated (arguably) through means outside his expertise renders him unqualified to offer that opinion. Once again, this pertains to weight. Moreover, the Court is satisfied that Lauria's expertise in vehicle-costing has provide him sufficient grounds to form his opinions based on the type of statistical data used in his profession, even though the reliability of that data may be susceptible to critique. This will be an appropriate subject for cross-examination and closing argument.

The Court also dismisses Jason's Deli's repeated assertions that Lauria's testimony is excludable (on grounds of qualification or otherwise) because of a lack of familiarity with the FLSA. That is not the test of Rule 703. As Jason's Deli recognizes, Courts have soundly rejected attempts by experts to offer legal opinions or conclusions. *See Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1128–29 (11th Cir. 2018) ("'[T]he court must be the jury's only source of law,' and questions of law are not subject to expert testimony." (quoting *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990))).

Lauria's opinions go to the reasonableness of Jason's Deli's reimbursement formula, particularly its sufficiency to offset the costs Jason's Deli effectively shifts to its employees by requiring them to use their personal vehicles to make deliveries. Lauria's experience and training in estimating the costs of operating a vehicle make him more than adequate to this task. Accordingly, the Court finds that Lauria is qualified to offer his opinions in this case.

b.     **Reliability**

The Court now moves to the question of the reliability of the

methods by which Lauria arrived at his conclusions. The reliability

inquiry concerns "whether the reasoning or methodology underlying the

testimony is scientifically valid and . . . whether that reasoning or

methodology properly can be applied to the facts in issue." *Daubert*, 509

U.S. at 592. Here, the Court considers

> to the extent practicable: (1) whether the expert's theory can
> be and has been tested; (2) whether the theory has been
> subjected to peer review and publication; (3) the known or
> potential rate of error of the particular scientific technique;
> and (4) whether the technique is generally accepted in the
> scientific community.

*United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004) (quoting

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340–41

(11th Cir. 2003)).

Jason's Deli's objections to the reliability of Lauria's conclusions

can be categorized into three main areas.[8] First, Jason's Deli argues

---

[8] The Court dealt with other aspects of Lauria's reliability objections in its conclusions about the relevance of Lauria's testimony to the ultimate issue of the reasonableness of Jason's Deli's approximation of Plaintiffs' expenses.

that the data Lauria relied upon is statistically flawed. Second, it argues that Lauria's testimony cannot be based on his perceptions of inadequacy as to how Jason's Deli determines reimbursements. Third, it argues that Lauria's assumptions that Jason's Deli relies only on fuel costs to the exclusion of other cost factors to derive its reimbursement rate is unreliable.

Jason's Deli first argues that Lauria's conclusions are based on flawed assumptions and data about how Jason's Deli derived its present delivery-driver reimbursement. Lauria concluded that Jason's Deli did not reasonably reimburse its delivery drivers at least in part because it lacks a structured, documented methodology for computing its reimbursement. Jason's Deli contends that just because it cannot explain how it derived its rate does not ipso facto mean that its reimbursement rate is illegal.

The Court agrees with this statement, but that does not render Lauria's methodology so flawed that his opinion should be excluded. Lauria's opinion is grounded in the record developed in this case: Jason's Deli admits that it has no explanation for how its delivery rates

are determined.[9] And while it is correct that a lack of structured methodology may not be per se illegal under the FLSA, that is not what Lauria concluded. Rather, he opines that in his professional experience, a deficient methodology for calculating reimbursement is indicative of unreasonableness because it suggests—but, importantly, does not demand—a conclusion that the rate produced by that methodology could overlook important costing factors. While the credibility of this conclusion is ultimately for the trier of fact, it is not the product of an unreliable methodology. Further, Lauria is well qualified to offer the opinion, and it is one that is relevant to facts in issue. It will be admitted.

Jason's Deli next challenges Lauria's opinion by arguing that he wrongly assumed that Jason's Deli's reimbursement rate was based solely on the costs of fuel. Jason's Deli admits that it has no evidence or explanation for the origin of its reimbursement rate, but nonetheless

---

[9] Indeed, Jason's Deli withdrew its good faith defense because it lacks any evidence regarding how it derived its base reimbursement rate or whether Jason's Deli considered the FLSA when doing so.

contends that it is entirely possible that its reimbursement could be based on something other than fuel costs.

However, the Court is satisfied that Lauria's opinion is grounded in the record. Lauria concludes that Jason's Deli's reimbursement methodology was fundamentally flawed because it focused only on fuel costs. This was based on his review of an email from Willa White, Jason's Deli's director of accounts payable, that the most recent change in the reimbursement from $1.25 per delivery to $1.50 per delivery was based on rising fuel costs. Lauria's inference from this evidence is at least permissible, if not necessary, given that White herself identified no cost factors other than fuel; nor has Jason's Deli proffered any other evidence that other cost factors went into the decision. Its suggestion that there are other cost factors involved is, at this point, just as speculative as Lauria's is claimed to be.

In sum, there is nothing particularly remarkable about Lauria's conclusion on this score, and his methodology in deriving it (i.e., abductive reasoning) is an accepted method of reaching plausible conclusions from incomplete evidence that is familiar in science, law,

and ordinary life. The weight afforded to such a conclusion may of course be challenged on cross-examination by facts suggesting the contrary, i.e., that Jason's Deli did consider other cost factors.[10]

Finally, Jason's Deli contends that Lauria's methods are unreliable because they depend on flawed statistical techniques. Relatedly, it also complains that Lauria erred when he assumed that a delivery driver made only one delivery per trip, when in fact he may have made multiple.

Plaintiffs generally contend that these flaws are issues of credibility for determination by the jury, rather than admissibility. The Court agrees. Jason's Deli's *Daubert* motions have the errant tendency of focusing on the reliability of Lauria's *conclusions*, rather his *methods* by which the conclusions were derived. Here, Jason's Deli challenges

---

[10] Lauria also states in his deposition that his conclusion that fuel costs are the only factor Jason's Deli considered in its reimbursement formula was derived from a comparison of the disparity between Jason's Deli's estimated reimbursement and his own. *See* [94-2] at 73:8–16. Recognizing that this also is not a necessary inference from the data, it is again at least permissible, particularly in light of the lack of any other explanation for Jason's Deli's reimbursement formula. Lauria's conclusion do not require "too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joyner*, 522 U.S. 136, 146 (1997).

the reliability of the data, rather than the formula into which the data was entered.

These arguments, however, "are, in essence, matters for cross-examination and, at most, go to the weight to be given to the expert opinions rather than to their admissibility." *Coward v. Forestar Realty, Inc.*, No. 4:15-cv-0245-HLM, 2018 WL 1980368, at *19 (N.D. Ga. Feb. 20, 2018). Reversing a district court's exclusion of expert testimony, the Seventh Circuit held that "the concerns that prompted the district court to exclude [the expert's] opinion implicated not the reliability of [his] methodology but the conclusions that it generated." *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 807 (7th Cir. 2013). Like Jason's Deli, the *Manpower, Inc.* district court had a problem "not with [the expert's] methodology but with his data selection . . . [and] thought [the expert] should have selected different data . . . ." *Id.* The Seventh Circuit went on to acknowledge a number of other cases when it reversed where "the district judge had agreed that the expert correctly employed a valid methodology but found the expert's opinion unreliable only because [it]

concluded that one of the key data inputs [he] used was not sufficiently reliable." *Id.*

So, rather than excluding Lauria, this Court will "let the jury determine how the uncertainty about [Lauria's data inputs] affect[] the weight of" Lauria's testimony. *Id.* (quoting *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013)). *See also Stollings*, 725 F.3d at 766 ("An expert may provide expert testimony based on a valid and properly applied methodology and still offer a conclusion that is subject to doubt. It is the role of the jury to weigh these sources of doubt."); *cf also McGarity v. FM Carriers, Inc.*, No. cv410-130, 2012 WL 1028593, at *7 (S.D. Ga. Mar. 26, 2012) ("Conflicting expert witness testimony is not grounds to exclude—the identification of flawed data or facts relied upon by an expert is precisely the role of cross-examination and does not render expert testimony inadmissible under *Daubert*.").[11]

----

[11] While there may be a distinction in a case such as this one where the expert has not opined (or indeed, disclaimed qualification to opine) on the quality of the data upon which he relies, the Court finds this still outside of *Daubert*'s scope. Lauria has made clear, and Jason's Deli has offered nothing to the contrary, that in his experience vehicle-costing experts rely on client-provided data without auditing their accuracy, such as precision of estimated mileage or the potential of multiple reimbursements being made in a single trip because one trip encompasses one or

Jason's Deli also makes a number of objections to other data inputs relied upon by Lauria to reach his conclusion. Among these are his inclusion of fixed costs such as insurance and registration. As the Court explains in more detail in the summary judgment section, *see supra*, Part II.A.I.b, these costs are at least in part reimbursable under the FLSA; therefore, Lauria properly considered them (notably, this again is an objection to relevance rather than reliability).

Jason's Deli's also objects to instances where it believes Lauria made unfounded judgment calls, namely in the number of miles per year driven on average by the plaintiff delivery drivers, projected versus historical data for their maintenance costs, and using certain "unverified" data from sites such as Edmunds.com. These are all judgment calls that the Court believes Lauria is qualified to make. Plaintiffs have adequately shown that Lauria's assumptions about

---

more deliveries. Thus, the Court finds Lauria's method and formulas reliable even if the data he uses in the course of applying those methodology leads to errors. Those errors go to the reliability of the conclusions derived from the methodologies rather than the methodologies themselves. Moreover, Lauria's methods are repeatable by other experts, which supports their reliability. Upon repetition, but with more precise or accurate data inputs, the error in his conclusions may be made manifest to the ultimate trier of fact: the jury.

which figures to include in his costing formula are characteristic of experts in the vehicle-costing field. He also provided the basis for his choosing certain averages or making certain assumptions; they were not "only his *ipse dixit* for why he reached certain conclusions." *Am. Pegasus SPC v. Clear Skies Co.*, No. 1:13-cv-03035-ELR, 2015 WL 10891937, at *14 (N.D. Ga. Sept. 22, 2015). Accordingly, Lauria's opinions are not excludable on the basis of reliability.[12]

### c.   Relevance

Jason's Deli also argues that Lauria's testimony is irrelevant to facts in dispute. First, it argues that his attempt to calculate a reasonable rate is irrelevant or potentially misleading because it suggests a "safe harbor" for reimbursements of costs for employee-owned vehicles, whereas the FLSA is concerned only with the floor, that is, the minimum amount necessary to ensure that unreimbursed

---

[12] The Court also rejects any suggestion that Lauria's testimony should be excluded because the facts or data upon which he relied were provided in large part by Plaintiffs' counsel. *See Page v. Admiral Craft Equip. Corp.*, No. 9:02-cv-15, 2003 WL 25685212, at *2 (E.D. Tex. July 10, 2003) ("Experts . . . are not investigators, nor are they lawyers and thus must rely on facts already discovered by the attorneys. To require otherwise would be inefficient and a waste of both parties' money and time.").

expenses incurred by a plaintiff-driver not cause his wages to fall below the minimum.

As the Court explains in regards to summary judgment and decertification, Lauria's opinion is relevant to the issue of whether Jason's Deli's reimbursement rate is a "reasonable approximation" of the expenses incurred by its delivery employees. Answering this question is furthered by understanding not only the methodologies that companies would ordinarily use to ascertain and quantify these costs (Lauria's opinion 1), but also by understanding both what Jason's Deli's present reimbursement is (Lauria's opinion 2) and how it might compare to an example of a reasonable reimbursement rate that takes into account all of the various costs of vehicle ownership (Lauria's opinion 3). Thus, the Court finds these opinions relevant.

Jason's Deli is correct to point out that Lauria's proposed reimbursement does not purport establish the bare minimum of what it must pay in order to cover the costs of its delivery drivers; indeed, Lauria himself indicates that his is not the only number that constitutes a "reasonable" or "equitable" reimbursement. But his

opinions as to the manner, factors, and rates that he in his professional capacity as a vehicle-cost expert has determined are relevant to this case.

Lauria's testimony will therefore not be excluded.

### 2.    Plaintiffs' Motion to Exclude Dr. Janet Thornton

Plaintiffs have moved to exclude Defendant's rebuttal expert, Dr. Janet Thornton. Plaintiffs do not appear to challenge her qualifications; rather, their arguments go to the reliability of her methodology and the relevance of her opinion. The Court will deny Plaintiffs' motion.

Dr. Thornton is offered solely to rebut the reliability of Plaintiffs' expert witness, Paul Lauria. The Court finds her opinion reliable to this end, as she is trained in statistics and applies her experience to demonstrate Lauria's alleged unreliability. Plaintiffs' criticisms of Dr. Thornton's sampling methodology do not demonstrate that her methods are altogether unreliable. They contend that she fails to follow her own prescribed statistical techniques because she did not use the larger sample size needed to reach a certain level of accuracy, which she contends is necessary to achieve Plaintiffs' claimed error rate. Even

though Dr. Thornton did not use such a sample size in her report, her conclusions based on other sample sizes are not fundamentally unreliable; they are valid to support Jason's Deli's claims about Lauria's unreliability.

The Court finds nothing wrong with Dr. Thornton's method of analysis, and her opinion is relevant to the purpose for which she is offered: to undermine Lauria's credibility. To the extent Plaintiffs believe her conclusions untrustworthy, this may be argued on cross-examination.

Accordingly, Plaintiffs' motion to exclude Dr. Thornton will be denied.

## C.   Jason's Deli's Motion for Decertification of the FLSA Collective Action

Jason's Deli has moved for decertification of the collective-action class of delivery drivers for Jason's Deli.

"[T]o maintain a collective action under the FLSA, plaintiffs must demonstrate that they are similarly situated." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). "The FLSA itself does not define how similar the employees must be before the case may

proceed as a collective action. And we [(the Eleventh Circuit)] have not

adopted a precise definition of the term." *Id.* at 1259. On a high level,

the Court must determine whether there is similarity of situation "with

respect to [the employees'] job requirements and with regard to their

pay provisions.'" *Id.* (quoting *Dybach v. Fla. Dep't of Corr.*, 942 F.2d

1562, 1568 (11th Cir. 1991)). "[U]nder § 216(b), courts determine

whether employees are similarly situated—not whether their positions

are identical." *Id.* at 1260. While the initial "conditional certification" is

a relatively light burden, once the plaintiff has had the chance to

develop the factual record, the second stage—decertification—"is less

lenient, and the plaintiff bears a heavier burden." *Id.* at 1261.

The Eleventh Circuit has approved several factors to assist

district courts in their review of motions to decertify:

> (1) disparate factual and employment settings of the
> individual plaintiffs; (2) the various defenses available to
> defendant[s] [that] appear to be individual to each plaintiff;
> [and] (3) fairness and procedural considerations[.]

*Id.* (alterations in original) (quoting *Anderson v. Cagle's, Inc.*, 488 F.3d

945, 953 (11th Cir. 2007)). The similarity of the class

> "must extend beyond the mere facts of job duties and pay
> provisions" and encompass the defenses to some extent. For
> example, the district court must consider whether the
> defenses that apply to the opt-in plaintiffs' claims are similar
> to one another or whether they vary significantly. But
> ultimately, whether a collective action is appropriate
> depends largely on the factual question of whether the
> plaintiff employees are similarly situated to one another.

*Id.* (citation omitted) (quoting *Anderson*, 488 F.3d at 953).

Jason's Deli contends that Plaintiffs should not be permitted to proceed with a collective action because there are too many factual variations among the putative class. These alleged variations can be grouped into two main categories: expenses and compensation (including wages and reimbursements).

The variation among Plaintiffs' expenses exists because of the differing number of miles driven, deliveries made per trip, and vehicle type (including age, mileage, fuel economy, etc.). But these variations will not defeat certification because the Court agrees with Plaintiffs that they may rely on a reasonable estimate of their expenses, rather than their actual expenses, to make a showing that their (approximate) expenses, when subtracted from their compensation, results in a below-minimum wage. And as the Court has already noted during its

treatment of summary judgment, Jason's Deli may attack the reasonableness of the approximation, and may if it chooses, rely on the disparity among the Plaintiffs' experiences to attempt to show that Plaintiffs' approximation is unreasonable. But it must do that before the jury, and not the Court in a motion to decertify.

The other category alleged—dissimilar compensation—is a bit trickier, though ultimately the Court concludes that these variations will not defeat certification. To establish their claim, Plaintiffs must first prove that Jason's Deli's reimbursement was not a reasonable approximation of Plaintiffs' vehicle expenses before it proceeds to the next question of whether Jason's Deli's unreasonable reimbursement reduced Plaintiffs' wages below the FLSA minimum. It is the latter question where the issue of compensation comes up, because it is possible that while the answer might be "yes" for most class members, Jason's Deli contends that some class members who were paid a higher hourly wage—even if they incurred unreimbursed expenses—might not experience an FLSA-violating reduction in their wages. Jason's Deli

argues that this possibility requires decertification of the class because liability varies among the class.

True, there is some variation as to the amount of Plaintiffs' compensation[13] including different hourly wage-rates and amounts (if any) received in so-called "discretionary" payouts; but these differences do not overwhelm the other classwide similarities. The Court agrees with Plaintiffs that "the need for individualized inquiry and calculation of damages is not enough to defeat commonality under Rule 23(a)," and will not decertify a class solely because one element of a claim may be less amenable to classwide resolution than others. *Brandenberg*, 2018 WL 5800594, at *4.[14] The existence of so many other commonalities among the putative class—including job descriptions, duties, and pay provisions (e.g., they were all paid hourly), as well as the central

---

[13] It is important to recall that within the decertification framework, this argument concerns only similarity of situation with respect to Plaintiffs' pay provisions. While important, it is only a part of the consideration of what makes a class "similarly situated."

[14] The Court looks to certification under Rule 23 as a guide for what claims and classes of persons are susceptible to classwide resolution because Rule 23's requirements are more stringent than § 216(b), meaning that satisfying Rule 23's standard would necessarily satisfy § 126(b)'s.

question of the reasonableness of Jason's Deli's current reimbursement—convince the Court that proceeding as a collective action is appropriate.[15]

In the ordinary parlance of complex litigation (if you can call that "ordinary"), the common issues predominate in this class. Notably, a § 216(b) collective action, unlike a Rule 23 class action, does not formally consider whether a "predominance" of common issues. This suggests that a Court could certify a collective action in case where common issues were at least in parity with the non-common (even so, this would not be such a case).

Finally, the Court also grounds its decision in the fact that district courts within the Eleventh Circuit have allowed Plaintiffs to demonstrate similar situation by showing that they are victims of a common policy that violated the law. *E.g.*, *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 363–65 (M.D. Ala. 1999); *see also Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) ("[A] court

---

[15] Considering the decertification framework, the Court invokes here considerations of procedural efficiency and fairness.

'require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" (some alterations in original) (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997))).

Here, Plaintiffs have provided the Court sufficient evidence that Jason's Deli's policy of reimbursing them in the manner that it does may violate the FLSA with respect to the whole class. And just because some people in the class were ultimately not victims of an FLSA violation does not, in itself, defeat certification. *See Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-GOODMAN, 2018 WL 3145807, at *14 (S.D. Fla. June 26, 2018) ("[C]lass certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct." (quoting *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 308 (5th Cir. 2009))); *Nevelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1309 n.35 (N.D. Fla. 2017) ("That some class members ultimately may not be successful on the trespass claim does not defeat certification where common issues otherwise predominate.").

The Court believes that the parties will be capable of fashioning procedures in a manner that will ensure that Jason's Deli is not held liable for injuries it did not cause. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049 (2016) (permitting the district court to deal with issues of allocation of damages to ensure "that only those class members who suffered an FLSA violation recover"). "It is routine in class actions to have a final phase in which individualized proof must be submitted." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). Because Plaintiffs have not elected to challenge Jason's Deli's records of their hours and wages paid, it should be fairly easy to determine who has and has not experienced a minimum-wage violation.

Accordingly, Jason's Deli's motion to decertify will be denied.

## III.  Conclusion

Based on the foregoing, the Court denies Jason's Deli's motion [94] for decertification and motion [103] to exclude Paul Lauria as an expert; denies in part and grants in part Jason's Deli's motion [95] for summary judgment as described herein; denies Plaintiffs' motion [97] to exclude Dr. Thornton's testimony; and denies in part and grants in part

Plaintiffs' motion [92] for partial summary judgment as described herein. The following Plaintiffs' claims are dismissed pursuant to the Court's ruling on summary judgment: Alex Alonso, Joyce Boyer, Alan Kirguev, Mikayla Luksha, Larry Powell, and Shiaisa Respers.

The Court also grants Plaintiffs' motion [105, 119] for leave to file excess pages and motion [93] for leave to file. It also grants Jason's Deli's motions [112, 123] for leave to file excess pages. Plaintiffs' motion [125] for leave to file a surreply is denied as moot.

Further, the parties are ordered to mediate within twenty-one days, which they may do with a magistrate judge at no cost by contacting the undersigned's courtroom deputy, or with a private mediator of the parties' choosing. Should mediation fail to produce a resolution, the parties are ordered to meet and confer within twenty-one days of the mediation and provide the Court with a proposed consolidated pretrial order. The case will then be set for trial forthwith on the issues remaining before the Court.

IT IS SO ORDERED this 8th day of August, 2019

_____
Timothy C. Batten, Sr.
United States District Judge