# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| NIAL BENTON and HUTTON GRAHAM, individually and on behalf of similarly situated persons, | * | |
| Plaintiff, | * | |
| v. | | |
| DELI MANAGEMENT, INC. d/b/a "JASON'S DELI," | * | Civil No. 1:17-cv-00296-TCB |
| Defendant. | * | |

**\*\*\*\*\*\***

## PLAINTIFFS' UNOPPOSED MOTION TO APPROVE COLLECTIVE ACTION SETTLEMENT WITH MEMORANDUM IN SUPPORT

Named Plaintiffs Nial Benton and Hutton Graham move for approval of the settlement reached in this certified Fair Labor Standards Act ("FLSA") collective action. Defendant Deli Management Inc. d/b/a "Jason's Deli" does not oppose this Motion. To effectuate a binding release, FLSA settlements require judicial approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982). Accordingly, Plaintiffs respectfully request that the Court enter an Order granting this motion,

approving the parties' settlement[1], and approving and authorizing the Notice of Settlement.[2]

Plaintiffs' counsel has conferred with Defense counsel and Defendant does not oppose this motion.

## Memorandum in Support

Plaintiffs and Defendant have reached a settlement of this FLSA collective action. Plaintiffs allege that Defendant under-reimbursed its delivery drivers for the automotive expenses they incurred to the extent that their unreimbursed business expenses reduced their net wages below the federal minimum wage (nominal wages – unreimbursed vehicle expenses = subminimum net wages).

Before and after the Court conditionally certified the case as a collective action pursuant to the parties' stipulation, over 400 total delivery drivers, including Plaintiffs Benton and Graham (collectively, "Drivers"), filed opt-in forms to assert their claims in this case. After some withdrawals and the Court's order finding certain opt-ins were time-barred, 403 opt-ins now remain in the collective action. On November 4, 2019, the parties engaged in an arm's-length, full-day mediation with Greg Thompson of Thompson Law in Houston, Texas. While the parties could not

---

[1] A copy of the parties' executed Settlement Agreement and Release of Claims ("Settlement Agreement") is attached hereto as Ex. A.

[2] A copy of the proposed notice is attached hereto as Ex. B.

resolve the matter that day, they later agreed to a settlement on November 15, 2019, which was facilitated by Mr. Thompson.

The settlement will provide substantial relief to the opt-ins. The settlement creates a Settlement Fund that will be paid out to the Plaintiffs, and will compensate Plaintiffs' counsel for their time and costs. Distributions from the Settlement Fund will be allocated based on an equitable formula considering the total number of deliveries each Plaintiff performed, the average length of deliveries, the wage rate they earned, and the reimbursement rate they received. The settlement value fully considers the risk and expense of continued litigation.

In sum, the settlement should be approved as a fair and reasonable compromise of a *bona fide* dispute.

### FACTS AND PROCEDURAL HISTORY

On January 25, 2017, Named Plaintiffs Nial Benton and Hutton Graham filed a Complaint against Defendant asserting a collective action under § 16(b) of the FLSA, 29 U.S.C. §216(b). Plaintiffs claimed that Defendant under-reimbursed its delivery drivers for the expenses incurred delivering food which caused their net wages to fall below the minimum wage. (Doc. 1).

On February 17, 2017, Defendant filed its Answer denying that its delivery drivers were under-reimbursed for expenses and denying minimum wage violations.

Defendants raised various affirmative defenses. Further, Defendants disputed Plaintiff's asserted bases for proceeding as a collective action. (Doc. 7).

On May 31, 2017, Plaintiffs filed a motion for conditional collective action certification, asking the Court to approve a proposed Notice to the putative opt-in plaintiffs (Doc. 23), and, on June 14, 2017, Defendants filed an opposition to that motion (Doc. 24). The Court granted the motion for conditional certification on December 18, 2017. (Doc. 29). Plaintiffs then mailed the Court-approved Notice to putative class members. The Notice advised those who joined this case of the terms and conditions under which they were joining:

> If you choose to join this lawsuit, and are ultimately determined by the Court to be an Opt-In Plaintiff, you will be bound by any ruling, settlement, or judgment, whether favorable or unfavorable, on the claim asserted. You will also be bound by, and will share in, to the extent appropriate, any settlement of the claim that may be reached on behalf of the Plaintiffs. By joining this lawsuit, you designate the Named Plaintiffs as your representatives, and to the fullest extent possible, to make decisions on your behalf concerning the case, the method and manner of conducting the case, the entering of an agreement with Plaintiffs' counsel regarding payment of attorneys' fees and court costs, the approval of settlements, and all other matters pertaining to this lawsuit. While this suit is pending, you may be required to submit documents and written answers to questions and potentially testify under oath at a deposition, hearing or trial.

Declaration of Mark Potashnick (Ex. D), ¶ 13 ("Potashnick Decl."). The Notice also advised:

> If you choose not to join this lawsuit, you will not be affected or bound by any ruling, judgment, or settlement rendered on the federal claim asserted in this case, whether favorable or unfavorable. You should be aware that Fair Labor Standards Act claims are limited to a two- or three-year statute of limitations, and delay in joining this case, or proceeding separately, may result in some or all of your claims expiring as a matter of law.

*Id.* at ¶ 14.

All opt-in plaintiffs filed a consent to join form with the Court, stating:

> I hereby consent to seek unpaid wages against Deli Management, Inc. in this or any subsequent action.  I designate the Named Plaintiff to make all decisions on my behalf concerning the method and manner of conducting the case including settlement, the entering of an agreement with Plaintiffs' counsel regarding payment of attorneys' fees and court costs, and all other matters pertaining to this lawsuit.  For purposes of this lawsuit, I choose to be represented by PAUL LLP, Weinhaus & Potashnick, and other attorneys with whom they may associate.

*Id.* at ¶ 15. In all, 403 individuals, including Messrs. Hutton and Graham, remain opt-ins in this suit.

After extensive written discovery and numerous depositions around the nation, the parties filed cross-motions for summary judgment on multiple legal issues.[3] Both parties filed *Daubert* motions, and Defendant Jason's Deli moved to decertify the collective action. The Court ruled on these motions on August 8, 2019. Doc. 132. The Court denied Jason's Deli motion to decertify the collective action, denied both

---

[3] *See* Docs. 92, 94, 95, 97, and 103.

parties' motion to exclude experts, and granted and denied in part both Plaintiffs' and Defendant's motions for summary judgment. *See* Doc. 132 at 56 57. The Court also ordered mediation within 21 days, which was later extended at Defendant's unopposed request. *See* Docs. 133 & 136.

To facilitate meaningful and informed settlement negotiations, Defendant supplemented its earlier disclosures to account for any passage of time from its initial production to the present, including critical payroll and delivery data for class members that showed employment dates, wages earned, wage rates paid, number of deliveries performed and vehicle reimbursements. This data, along with voluminous data Defendant earlier produced in discovery, was used to evaluate the parties' claims and defenses and to quantify damages.

After careful analysis of all the data, counsel for the parties mediated with Greg Thompson for a full day on November 4, 2019 in Houston, Texas. However, they were unable to settle that day.  But Mr. Thompson remained engaged with both sides, and facilitated a settlement achieved November 15, 2019.

### Approval Process

Unlike settlements under Fed. R. Civ. P. 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required. *See, e.g., Williams v. K&K Assisted Living LLC,* 2016 U.S. Dist. LEXIS 9310, \*2-4 (E.D. Mich. Jan. 27); *Prena v. BMO Fin. Corp.,* 2015

U.S. Dist. LEXIS 65474, *1-2 (N.D. Ill. May 15) (**"**One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)"); *Prince v. QS Am., Inc.,* Case No. 1:15-cv-02033-TWT, Docs. 63 & 65 (N.D. Ga. 2016)  (approving FLSA settlement for conditionally-certified class in one-step).

### KEY SETTLEMENT TERMS

The attached Settlement Agreement contains the full terms for the Court's review. The Agreement requires Defendants to create a Gross Settlement Fund that will provide Drivers the equivalent of an increased reimbursement rate for each delivery made in exchange for a limited release encompassing waiver of only the Drivers' wage and hour claims under state and federal law.  The Settlement Fund, all of which will be paid out, will be distributed equitably based on the number of deliveries performed, the wage rates earned, and the vehicle-cost reimbursements received for each Driver during the applicable limitations period.

The Settlement provides for a modest service award of $3,000.00 to each of the named Plaintiffs, who were instrumental in pursuing this case.  They worked closely counsel throughout the litigation to investigate the case and further the litigation. Both Mr. Graham and Mr. Benton travelled from the Atlanta area to personally attend mediation in Houston, Texas. They did so for the benefit of all those delivery

drivers who will recover under this settlement.  Also, unlike the other Plaintiffs, the Named Plaintiffs will sign a general release as part of the consideration for their service awards.

The Settlement further provides that attorneys' fees, costs, and administrative costs, which were negotiated separately from the Plaintiffs' recovery, from the settlement allocation for the opt-ins, will be paid out of the Gross Settlement Fund.

ARGUMENT

## I.  The Court Should Approve this Case to be Settled as a Collective Action

The initial step in approving a collective action settlement is often determining final certification. However, the Court has already done that based on a thorough analysis of the facts and applicable law.  Doc. 132, at 49-56 ("commonalities among the putative class, including job descriptions, duties, and pay provisions (e.g. they were all paid hourly), as well as the central question of the reasonableness of Jason's Deli's current reimbursement—convince the Court that proceeding as a collective action is appropriate.").  Therefore, the remaining issue is approval of the settlement terms.  Courts should approve FLSA settlements which reflect a "reasonable resolution of a *bona fide* dispute."  *Lynn's Food Stores,* 679 F.2d at 1354.

## II.  The Settlement Resolves a "*Bona Fide*" Dispute

Plaintiffs allege that Defendant violated the FLSA because they failed to reasonably reimburse their delivery drivers for their automobile expenses, and thus

8

failed to pay them minimum wages (nominal wage rate – unreimbursed vehicle expenses = subminimum net wages).

Defendant adamantly denies Plaintiffs' allegations. Defendant argues, among other things, that delivery drivers were sufficiently paid and reimbursed. Defendant has also argued that Plaintiffs' damage calculations are inflated.

The parties each filed summary judgment and *Daubert* motions, thereby demonstrating their divergent views of the key legal and factual issues.

Defendant vigorously contested whether the claim should proceed as a collective action at both the conditional certification and final certification (decertification) stages.

If Plaintiffs' allegations were proven correct, Defendant would be faced with the prospect of a significant monetary verdict in Plaintiffs' favor, as well as the duty to pay both sides' attorney fees and costs. If Defendant's arguments were correct, then Plaintiffs faced a potential dismissal of their claims and no recovery for the opt-ins.

Based on the history of this litigation and these additional facts, the Court should readily conclude that a *bona fide* dispute between the parties exists over FLSA violations and the various defenses asserted.

## III.    The Proposed Settlement Is Fair and Reasonable.

This settlement was the product of arm's length negotiations by experienced counsel and has the effect of providing substantial relief to all opt-in Plaintiffs,

eliminating the inherent risks both sides may bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); s*ee also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

The settlement provides that for a total of $360,730.00 to be paid to the Plaintiffs, after service awards, fees, litigation costs, and administration costs.  That amount is less than Plaintiffs' calculation of actual damages and more than Defendant's calculation.  Based on their expert's vehicle costing report, Plaintiffs calculated a total of $404,334.34 of actual damages due to all Plaintiffs (roughly an average of $1,000.00 per Plaintiff).  On the other hand, Defendant's expert calculated various damage scenarios ranging from $29,908.00 to $347,759.00. Thus, the parties have reached a classic compromise because the recovery equates to more than the Defendants' calculation of damages, but less than Plaintiff's calculation.

The settlement provides each class member with the chance to obtain meaningful relief.  The average recovery, after the service award, fees, litigation costs and administrative costs is projected to be $895.11 ($360,730.00 / 403 class members = $895.11 average recovery per Plaintiff).  Thus, the settlement provides the delivery drivers meaningful relief now, rather than the mere possibility of an unknown amount of recovery at some unknown future date.  Importantly, other than the two Named Plaintiffs, all Plaintiffs will sign only a limited release of federal and state wage and hour claims.

From a different perspective, based on Plaintiffs' calculation of total damages, they have recovered approximately 89.2% of class-wide actual damages ($360,730.00 / $404,334.34 total class-wide actual damages based on Plaintiff's expert's report = 89.2%) *after* payment of service awards, fees, litigation costs and administration costs. Such recovery falls well within the range of comparable settlement approved around the nation in similar claims.  *See, e.g., Prince v. Perfect Delivery, Inc.,* Case No. 8:17-cv-01950-BHH (D.S.C.), ECF Doc. 45-2, at 15-16 (approving settlement when plaintiffs recovered the amount of actual damages *before* subtracting service award, fees and costs) & ECF Doc. 62 (approving settlement); *Jimenez v. Pizzerias, LLC,* 2017 U.S. Dist. LEXIS 129820, *10-11 (S.D. Fla. Aug. 14) (approving settlement when plaintiffs recovered two-thirds of the amount of actual damages *before* subtracting service award, fees and costs); *Selk v.*

*Pioneers Memorial Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) (recognizing reasonable ranges of settlement of FLSA claims between 26% and 60%); *Jones v. Agilysis, Inc.,* 2014 U.S. Dist. LEXIS 68562, *9-10 (N.D. Cal. May 19) (finding a FLSA settlement that constituted between 30% to 60% of recoverable damages to constitute a "tangible monetary benefit" for the class members); *Knight v. Red Door Salons,* 2009 U.S. Dist. LEXIS 11149, *9-10 (N.D. Cal. Feb. 2) (recovery of 50% of possible damages in a wage and hour action was "substantial achievement on behalf of the class").

## IV.   Additional Factors Warrant Settlement Approval

Consideration of additional relevant factors confirms the proposed settlement should be approved as is fair and reasonable.

### A.   Similar Settlements Are Repeatedly Approved

Courts around the nation, including this District, routinely approve similar settlements in minimum wage claims based on under-reimbursement of vehicle expenses. *See, e.g., Prince v. QS America, Inc.*, Case No. 1:15-cv-02033-TWT, Docs. 63, 65 (N.D. Ga. 2016); *Merbaum v. Cady Studios, Inc., Case No*. 1:16-cv-04623-TWT, Docs. 27, 28 (N.D. Ga. 2017); *Gomez v. South Fla. Pizza, LLC,* 2018 U.S. Dist. LEXIS 11648 (S.D. Fla. Jan. 24, 2018); *Jimenez v. Pizzerias, LLC,* 2017 U.S. Dist. LEXIS 129820 (S.D. Fla. Aug. 14, 2017); *Armes v. Hot Pizzas, LLC,* 2017

U.S. Dist. LEXIS 89920 (D. Ariz. Jun. 9, 2017); *Hackett v. ADF Rest. Invs.,* 259 F.Supp.3d 360 (D. Md. Dec. 19, 2016).

### B.    Public Policy Favor Settlement

The familiar adage that "public policy favors settlements" is particularly true in complex cases, such as this, where substantial resources can be conserved by avoiding the time, cost and rigor of protracted litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation). There can be no doubt that substantial time and money, both for this Court as well as the parties, has been conserved in fairly settling now as opposed to continuing to litigate this case through trial and potential appeals.

### C.    Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief

As outlined above, the parties adamantly disagree about the merits of Plaintiffs' claims, the viability of the various defenses, and the amount of damages shown by the facts.  Plaintiffs survived Defendant's decertification, but the outcome of a trial on the merits was far from a foregone conclusion. Even if Plaintiffs established liability, they still faced considerable obstacles in proving both the fact and amount of damages.

Although the top of the range of potential recovery at trial may have been greater than obtained through this settlement, it is equally possible that such recovery would have been less. Plaintiffs' attempt to strike Defendant's expert, Dr. Janet Thornton,

was denied by the Court. The Court found "nothing wrong with Dr. Thornton's method of analysis" and determined that her "opinion [is] relevant to the purpose for which she is offered: to undermine [Plaintiff's expert's] credibility." Doc. 132 at 49. Thus, the jury would have heard Dr. Thornton's expert testimony attacking Plaintiff's expert as using statistically-unsound methods and criticizing Plaintiffs' damages as overstated. *See, e.g., In re Bear Stearns Cos., Inc. Sec. Litig.*, 909 F.Supp.2d 259, 266-67 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured.").

Consequently, this settlement provides a certain result and value now, as opposed to a speculative result that may occur years from now. The substantial benefit that will be received by opt-in Plaintiffs immediately and made certain by the settlement is a significant factor weighing in favor of the Court's approval of the proposed settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 326 (N.D. Ga. 1993) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, 'it has been held proper to take the bird in the hand instead of a prospective flock in the bush.'").

### D.     This was a Complex Case

This case certainly qualifies as complex, both in establishing liability and in proving damages. Many issues of fact and law remain unanswered and would have to be resolved at or before trial. Any trial would be lengthy, costly, and complex to resolve the alleged violations of the FLSA's minimum wage requirements during each week of the recovery period. Both sides would be required to pay for expensive expert testimony and trial preparation. *See, e.g., Perrin v. Papa John's Int'l., Inc.,* 2014 U.S. Dist. LEXIS 133974, *12-13 (E.D. Mo. Sept. 24) (recognizing that each side had hired vehicle costing experts to establish a reasonable company-wide vehicle cost reimbursement rate).

Regardless of the outcome at trial, post-judgment appeals would be likely. Accordingly, the complexity, expense and duration of litigation weigh in favor of approving the proposed settlement.

### E.     Plaintiffs' Counsel and Plaintiffs Support the Settlement

During this litigation, Plaintiffs' Counsel have gained a comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and have acquired ample evidence on which to assess the proposed settlement. Based on their knowledge of the facts and the applicable law, as well as their extensive experience litigating / arbitrating many similar FLSA actions on behalf of food delivery drivers, Plaintiffs' Counsel believe the settlement is fair, reasonable, and

adequate.  Declaration of Richard M. Paul, attached as Ex. C, ¶ 8 ("Paul Decl.");

Potashnick Decl., ¶ 9.

Additionally, Named Plaintiffs Benton and Graham, who have been active

participants throughout this litigation and all settlement negotiations, have executed

the Settlement Agreement indicating their approval of the agreement. Accordingly,

this Court should conclude that the proposed settlement reflects a fair and reasonable

resolution of a *bona fide* dispute over minimum wage compliance and approve the

settlement.

## V.    Service Awards are Warranted

Plaintiffs' Counsel seeks service awards for the Named Plaintiffs in an amount

of $3,000.00 each. Incentive awards to class representatives are an accepted element

of these types of cases.  *Prince v. QS America, Inc.*, Case No. 1:15-cv-02033-TWT,

Docs. 63, 65 (N.D. Ga. 2016) (approving $3,000.00 service award); *Merbaum v.*

*Cady Studios, Inc., Case No*. 1:16-cv-04623-TWT, Docs. 27, 28 (N.D. Ga. 2017)

(same); *Hillis v. Equifax Consumer Servs., Inc.*, 2007 U.S. Dist. LEXIS 48278, *50-

51 (N.D. Ga. June 12) (approving $7,500.00 service award to each named plaintiff).

Certainly, a $3,000 service award to Messrs. Benton and Graham is reasonable and

appropriate. Potashnick Decl., ¶ 12. They substantially assisted counsel in achieving

this settlement on behalf of the opt-in plaintiffs, and should receive a service award.

*Id*. They were responsible for seeking counsel, initiating this action, and providing

guidance and assistance on numerous occasions to Plaintiffs' Counsel. *Id*. They had numerous calls with counsel regarding issues which arose in this suit. *Id*. They actively participated in each round of settlement negotiations. *Id*. Both Mr. Benton and Mr. Graham sat for their deposition, responded to written discovery, and flew from the Atlanta area to Houston, Texas to actively participate in an all-day mediation. There is no question that the other opt-in plaintiffs have substantially benefited from their actions. Without their efforts, this case would not have been brought and this recovery for the class would not have been achieved. *Id*.

## VI.   Attorney's Fees and Costs

By separate fee application, Plaintiffs' Counsel also request approval of their attorneys' fees and reimbursement of expenses incurred in this case since its inception and for future legal services and expenses to be incurred in connection with the settlement. Plaintiffs' Counsel is seeking less than its lodestar in fees plus its out-of-pocket expenses, as more specifically detailed in the fee applications filed contemporaneously with this motion.

Critically, Plaintiffs' Counsel's fees and expenses were negotiated separately during settlement negotiations to remove any conflict between the opt-ins and counsel. Defendant does not oppose or dispute such application.

## CONCLUSION

This settlement was reached as a result of contentious arm's length negotiations, which were undertaken in good faith by experienced counsel. The parties thoroughly investigated and analyzed the facts and law and reached a reasonable settlement given the risk to which each side was exposed. The settlement is fair, reasonable, and adequate, and provides the opt-in Plaintiffs with significant relief. For these reasons, and those set forth above, Plaintiffs respectfully requests that the Court approve the settlement.

### Font and Point Certification

The undersigned counsel hereby certify under LR 7.1.D that the above brief was prepared with Times New Roman 14-point font.

Dated: December 23, 2019

Respectfully submitted,

**PAUL LLP**
Richard M. Paul III
(Admitted *pro hac vice*)
Sean R. Cooper
(Admitted *pro hac vice*)
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone:   (816) 984-8100
Facsimile:    (816) 984-8101
Rick@PaulLLP.com
Sean@PaulLLP.com

**WEINHAUS & POTASHNICK**
/s/ *Mark Potashnick*
Mark A. Potashnick
(Admitted *pro hac vice*)
11500 Olive Boulevard, Suite 133
St. Louis, Missouri 63141
Telephone:   (314) 997-9150
Facsimile: (314) 997-9170
markp@wp-attorneys.com

**THE WEINER LAW FIRM**
Andrew Weiner (GA Bar #808278)
3525 Piedmont Road
7 Piedmont Center, 3rd Floor
Atlanta, Georgia 30305
Telephone:   (404) 254-0842
Facsimile: (866) 800-1482

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on December 23, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Mark Potashnick*