# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NIAL BENTON and HUTTON GRAHAM,
individually and on behalf of
similarly situated persons,

    Plaintiffs

Case No. 1:17-CV-00296

v.

DELI MANAGEMENT, INC., d/b/a
"JASON'S DELI"

    Defendant

_____/

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between, on the one hand, named Plaintiffs Nial Benton and Hutton Graham (the "Named Plaintiffs"), on behalf of themselves and Opt-in Plaintiffs (as herein defined), and, on the other hand, Deli Management, Inc., d/b/a Jason's Deli ("Defendant") (Named Plaintiffs, Opt-in Plaintiffs, and Defendant are collectively referred to as the "Parties").

1. **RECITALS AND BACKGROUND**

WHEREAS, Named Plaintiffs filed a Complaint against Defendant in the U.S. District Court for the Northern District of Georgia entitled <u>Nial Benton and Hutton Graham, individually and on behalf of similarly situated persons v. Deli Management, Inc., d/b/a "Jason's Deli"</u>, Case No. 1:17-cv-00296 ("Complaint");

WHEREAS, the Complaint asserted a collective action claim under the Fair Labor Standards Act ("FLSA"), and sought recovery of unpaid vehicle expenses (which Named Plaintiffs alleged reduced net wages below the federal minimum wage), liquidated damages, and attorneys' fees and costs on behalf of current and former delivery drivers who have been employed at Defendant's deli restaurants during the times relevant;

WHEREAS, the Court on December 18, 2018, granted conditional collective certification of Named Plaintiffs' FLSA claims and ordered notice to be given to potential class members in the form approved by the Court;

WHEREAS, following the notice period, the action consisted of 403 Opt-in Plaintiffs, including Named Plaintiffs, who worked as delivery drivers in 151 of Defendant's restaurants throughout the United States;

WHEREAS, the Court directed the Parties to attend mediation to try to resolve their differences after the Court denied Defendant's motion for decertification, denied the Parties' respective motions in limine to exclude expert testimony, and granted and denied in part, the Parties' respective motions for summary judgment.

WHEREAS, following a full-day mediation session with an experienced mediator, and protected post-mediation settlement negotiations facilitated by the mediator, the Parties reached a settlement to fully and finally resolve their differences based on the terms and conditions set forth in this Agreement, and to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, Plaintiffs' Counsel has analyzed and evaluated the merits of Plaintiffs' claims in the Litigation, and, based upon Plaintiffs' Counsel's analysis, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or that it might result in a recovery that is less favorable than this settlement, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of Named Plaintiffs and Opt-in Plaintiffs;

WHEREAS, Defendant denies and continues to deny the allegations in the Complaint and denies and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Complaint. Nonetheless, without admitting or conceding liability, wrongdoing, or damages, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden and expense of continuing Litigation;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration

provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

2. **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

2.1 **Agreement.** "Agreement" means this Settlement Agreement and Release.

2.2 **Approval Order.** "Approval Order" means the Order of Dismissal with Prejudice approving the terms and conditions of this Settlement Agreement.

2.3 **Settlement Claims Administrator.** "Settlement Claims Administrator" means CAC Services Group, LLC.

2.4 **Court.** "Court" means the United States District Court for the Northern District of Georgia.

2.5 **Defendant.** "Defendant" means Deli Management, Inc., d/b/a Jason's Deli.

2.6 **Defendant's Counsel.** "Defendant's Counsel" means Johnson Jackson LLC (who appear pro hac vice) and Stokes Wagner (who serve as local counsel).

2.7 **Litigation.** "Litigation" means the matter titled <u>Nial Benton and Hutton Graham, individually and on behalf of similarly situated persons v. Deli Management, Inc., d/b/a "Jason's Deli"</u>, Case No. 1:17-cv-00296.

2.8 **Named Plaintiffs.** "Named Plaintiff(s)" means Nial Benton and Hutton Graham, individually or collectively.

2.9 **Opt-in Plaintiffs.** "Opt-in Plaintiffs" means all persons who have filed a consent to join form in the Litigation and who have not subsequently withdrawn that form or have been dismissed from the Litigation by the Court.

2.10 **Parties.** "Parties" means Named Plaintiffs, Opt-in Plaintiffs, and Defendant, collectively.

2.11 **Plaintiff's Counsel.** "Plaintiffs' Counsel" means Paul LLP (who appear pro hac vice), Weinhaus & Potashnick (who appear pro hac vice), and The Weiner Law Firm (who appear as local counsel).

3

2.12 **Released Parties.** In addition to Defendant, the other Released Parties include Defendant's parents, affiliates, subsidiaries, successors, assigns, insurers, agents, predecessors, affiliates, representatives, attorneys, directors, officers, joint venture partners, managing partners, and all persons acting by, through, under or in concert with them.

2.13 **Gross Settlement Fund or GSF.** "Gross Settlement Fund" or "GSF" means $897,500.00, which shall be distributed per the terms of this Agreement, subject to approval by the Court. The GSF is the maximum amount Defendant shall pay to settle the Litigation as set forth in this Agreement, including any attorneys' fees, costs, and any fees associated with the distribution of the Settlement Checks by the Settlement Claims Administrator.

2.14 **Net Settlement Fund or Settlement Amount.** "Net Settlement Fund" or "Settlement Amount" means the Gross Settlement Fund less $525,000.00 for lawyer fees, litigation costs, settlement claim administrator's costs and the Court-approved Service Awards of $3,000.00 to each of Named Plaintiffs.

2.15 **Settlement Checks.** "Settlement Checks" means the set of checks issued to Named Plaintiffs and Opt-in Plaintiffs for their share of the Net Settlement Fund calculated in accordance with this Agreement.

2.16 **Settlement Hearing.** "Settlement Hearing" means any hearing set by the Court for purposes of determining the fairness, adequacy, and reasonableness of the Agreement and entering the Order Granting Approval of Settlement.

2.17 **Settlement Notice.** "Settlement Notice" means a one-page document entitled Notice of Settlement to be approved by the Court and mailed to Opt-In Plaintiffs with their Settlement Checks.

3. **SETTLEMENT TERMS**

3.1 **Binding Agreement.** This Agreement is a binding agreement and contains all material terms.

3.2 **Motion for Order Approving Settlement.**

   (A) By December 20, 2019, Plaintiffs' Counsel shall file a Motion for Order Approving Settlement of Collective Action and Authorizing Notice of Settlement ("Approval Motion"). Plaintiffs' Counsel will

4

provide Defendant's Counsel with a draft of the Approval Motion for review and comment as soon as practicable before filing it with the Court. With the Approval Motion, Plaintiffs' Counsel will also file the Settlement Agreement, Proposed Approval Order, and Proposed Settlement Notice. Among other things, the Approval Motion will ask the Court to: (a) issue and enter the Approval Order approving the Settlement as fair, adequate, and reasonable, (b) approve Settlement Notice to be sent to Named Plaintiffs and Opt-in Plaintiffs and the Settlement Notice distribution process, (c) incorporate the terms of this Settlement, and (d) enter an Order dismissing the case without prejudice, with leave to reinstate on or before 180 days after the first Settlement Notices are sent pursuant to the terms of the Settlement, and in the event a motion to reinstate is not filed on or before 180 days after the first Settlement Notice is sent, dismissing the case with prejudice.

(B) In the event the Court does not approve the Settlement and/or this Agreement, the Parties (a) must attempt to renegotiate the Settlement for the purpose of obtaining Court approval or a renegotiated Settlement and Agreement (b) and/or either or both Parties may seek reconsideration or appellate review of the decision denying approval of the Settlement or Agreement. In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the Litigation will proceed as if no settlement had been attempted. In that event, nothing in the Settlement or Agreement may be used by or against any Party under Rule 408 of the Federal Rules of Evidence.

## 3.3   Gross Settlement Fund and Funding of Qualified Settlement Fund.

(A) Defendant agrees to pay a maximum Gross Settlement Fund of $897,500.00 (inclusive of attorneys' fees, costs, and service awards) to fully and finally resolve and satisfy any and all claims by Named Plaintiffs and Opt-in Plaintiffs asserted in the Litigation, inclusive of attorneys' fees, costs, and service awards, and releases per Section 4.1 below. Said total payment amount shall be distributed as follows:

(1) After deductions provided in Sections 3.4 and 3.5 below, all remaining funds shall be distributed to Opt-In Plaintiffs on a pro-rata basis according to an equitable formula determined by

5

Plaintiffs' Counsel based primarily on the total number of miles driven by each Opt-in Plaintiff and the reimbursements they received from Defendant. However, no Named Plaintiff or Opt-in Plaintiff shall receive less than $50.00. Within 5 business days of the Approved Order, Plaintiffs' Counsel will email the Claims Administrator and Defendants' Counsel a spreadsheet containing the breakdown of the settlement distribution. By no later than April 15, 2020, on the condition that the Approval Order has been entered and it has become a non-appealable, final order, Defendant will provide the Claims Administrator with the Settlement Amount. In the event the Approval Order has not been entered or it has not become a non-appealable, final order by April 15, 2020, Defendant will issue payment within 5 days of the date it becomes a non-appealable final order.

(2) Within 15 days of receiving the Settlement Amount, the Claims Administrator will mail (1) a check to Plaintiffs' Counsel for the total amount of Attorneys' Fees and Costs approved by the Court; (2) a check for each Named Plaintiff and Opt-in Plaintiff in the amount specified in the spreadsheet referenced above; and (3) a check to each of the Named Plaintiffs in the amount of $3,000.00. If any payments to Named Plaintiffs or Opt-in Plaintiffs are returned by the postal service as undeliverable, Defendant and Plaintiffs' Counsel will provide the Settlement Claims Administrator any personally identifiable information of such Named Plaintiffs or Opt-in Plaintiffs that Defendant's or Plaintiffs' Counsel have in their possession to assist in their search for a more recent address so that the payments can be promptly re-mailed to the correct address. If any Opt-in Plaintiff fails to cash his or her check within 150 days after the date of the check, the Settlement Claims Administrator will void the check and return those funds back to Defendant.

3.4 **Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A) Plaintiffs' Counsel will petition the Court for an award of attorneys' fees and litigation costs in the amount of $525,000.00.

(B) Payment to Plaintiffs' Counsel for attorneys' fees and litigation costs shall be paid by no later than April 15, 2020, on the condition that the

6

Approval Order has been entered and it has become a non-appealable, final order. In the event the Approval Order has not been entered or it has not become a non-appealable, final order by April 15, 2020, Defendant will issue payment to Plaintiffs' Counsel within 5 days of the date it becomes a non-appealable final order. Defendant will not contest the amount sought as attorneys' fees and litigation costs. The settlement is not conditioned upon the Court's approval of Plaintiffs' Counsel's petition for fees and costs. Any portion of the attorneys' fees that are not approved by the Court will be added back to the Net Settlement Fund for ratable distribution to the Opt-in Plaintiffs.

3.5 **Service Awards**

(A) In recognition of services they rendered to Opt-in Plaintiffs, Named Plaintiffs Nial Benton and Hutton Graham will each apply to the Court to separately receive $3,000.00 as a Service Award ("Service Award"). Defendant shall not oppose this application.

(B) The application for the Service Award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Lawsuit. The outcome of the Court's ruling on the application for the Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.

(C) An Approved Service Award shall be paid by no later than April 15, 2020, on the condition that the Approval Order has been entered and it has become a non-appealable, final order. In the event the Approval Order has not been entered or it has not become a non-appealable, final order by April 15, 2020, Defendant will issue the Approved Service Award within 5 days of the date it becomes a non-appealable final order. Any portion of the service award that is not approved by the Court will revert back to the Defendant.

3.6 **Tax Characterization.**

(A) The Parties agree that, for tax purposes, all funds distributed to Named Plaintiffs and Opt-in Plaintiffs under Section 3.3 above shall be treated as reimbursement of self-paid business expenses related to the use of their vehicles, and therefore no taxes shall be withheld from such payments. Also, all payments made to Named Plaintiffs and

7

Opt-in Plaintiffs in resolution of their claims in this Litigation will not be considered for purposes of calculating, or recalculating, benefits provided by Defendant under the terms or conditions of any benefits plan.

(B) The Parties agree that, for tax purposes, the service award to Named Plaintiffs under Section 3.5 above shall be treated as non-employee income and Defendant shall issue Named Plaintiffs an IRS Form 1099 in the amount of their service award.

(C) Named Plaintiffs and Opt-in Plaintiffs shall be solely and exclusively responsible for all taxes, interest and penalties, if any, of any nature, owed with respect to any payment received by them under this Agreement and will indemnify and hold Defendant's and Plaintiffs' Counsel harmless from and against any and all taxes, penalties, and interest of any nature assessed as a result of any Opt-in Plaintiff's failure to timely and properly pay such taxes.

3.7 **Retention and Responsibilities of the Settlement Claims Administrator.** Plaintiffs shall retain the Settlement Claims Administrator.

(A) The Settlement Claims Administrator shall be responsible for, among other things, for preparing, cutting, and mailing Settlement checks to Named Plaintiffs and Opt-in Plaintiffs; cutting and mailing Court-approved attorneys' fees and costs to Plaintiffs' Counsel; printing and providing W-2s and 1099 forms as required under this Agreement and applicable law; and for such other tasks set forth in this Settlement or as to which the Parties mutually agree.

(B) The Settlement Claims Administrator shall also establish, control, and maintain the GSF according to the terms of this Agreement.

(C) The Settlement Claims Administrator's fees shall come out of the GSF and be paid from the GSF upon completion of all duties required to be performed by the Settlement Claims Administrator under the terms of this Agreement and any Court orders. Defendant will not be responsible for any additional fees for any services provided by the Claims Administrator other than paying the GSF.

(D) The Parties agree to cooperate with the Settlement Claims Administrator, and to provide accurate information necessary to send Settlement Checks in accordance with the terms of this Agreement.

(E) Within 10 days after the Approval Order is entered, Plaintiffs' Counsel shall provide the Settlement Claims Administrator (and a copy to Defendant's Counsel) with a list, in electronic form, of the names of Named Plaintiffs and Opt-in Plaintiffs, their eligible work weeks, their number of miles driven, and their total reimbursements received. Plaintiffs' Counsel shall also provide the Settlement Claims Administrator with the last known address, e-mail address, and phone number of Named Plaintiffs and Opt-in Plaintiffs.

(F) As discussed below, Settlement Notice and Settlement Checks will be mailed via First Class U.S. Mail to Named Plaintiffs and Opt-in Plaintiffs by the Settlement Claims Administrator no later than 5 days after April 15, 2020, or within 5 days after the Approval Order becomes a non-appealable, final order, whichever is later. If there is an appeal of the Approval Order by any person, Settlement Notice and Settlement Checks shall not be sent until all appeals are decided and the case is returned to the District Court and the District Court enters an Order that the Settlement Notice and Settlement Checks should be sent.

(G) The Parties will have equal access to the Settlement Claims Administrator and all information related to the administration of the Settlement. The Settlement Claims Administrator shall provide such information to either Party upon request. The Settlement Claims Administrator will provide regular reports to counsel for the Parties regarding the status of the mailing of the Notice to Named Plaintiffs and Opt-in Plaintiffs, the claims administration process, and distribution of the Settlement Checks.

## 3.8 Settlement Check Cashing Period

(A) The end of the time period for Named Plaintiffs and Opt-in Plaintiffs to endorse and deposit their Settlement Check shall be 150 days after the day on which the Settlement Claims Administrator mails a Settlement Check to Plaintiffs and Opt-in Plaintiffs ("Settlement Check Cashing Period"). The Settlement Claims Administrator will, within 10 days after the last day on which it mails the last Settlement

Check to any Named Plaintiff or Opt-in Plaintiff, notify Plaintiffs' Counsel and Defendant's Counsel by email of the precise date of the end of the Settlement Check Cashing Period. Any Named Plaintiff or Opt-in Plaintiff who does not cash and/or deposit their Settlement Check within the Settlement Check Cashing Period will not release any claims against Defendant and unclaimed settlement funds will revert to Defendant.

(B) 90 days after the Settlement Claims Administrator issues Settlement Checks to Named Plaintiffs and Opt-in Plaintiffs, the Settlement Claims Administrator will issue a reminder postcard to Named Plaintiffs and/or Opt-in Plaintiffs who have not cashed their Settlement Check advising them of the check void date.

(C) No later than 150 days after the last Settlement Check is mailed to a Named Plaintiff or Opt-in Plaintiff, the Settlement Claims Administrator shall provide Defendant with a signed copy of each Settlement Check that has been cashed by Named Plaintiffs and/or Opt-in Plaintiffs, redacting any bank account information and the Settlement Claims Administrator will void all outstanding checks and return such funds to Defendants.

(D) If at any time within the Settlement Check Cashing Period a Named Plaintiff or Opt-in Plaintiff reports a lost or destroyed check, and informs the Settlement Administrator that she or he did not receive a check or otherwise requests reissuance of her or his Settlement Check, the Settlement Claims Administrator shall stop payment on such check and issue a replacement check.

## 4. RELEASE

### 4.1 Release of Claims.

(A) **Release by Opt-In Plaintiffs:** By accepting payment of his or her pro rata share of the NSF, each Opt-in Plaintiff releases all wage and hour claims accrued through the date of this Agreement that were or could have been made against the Released Parties in this Litigation, or similar wage-based claims based on the same facts alleged in the Complaint, including all claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq., and any applicable state wage and hour law, whether known or unknown, including but not limited to any and all

10

claims based on the same facts alleged in the Complaint arising out of any federal or state wage or minimum wage laws, any and all claims for unpaid or underpaid employee expense reimbursement, any and all claims for unjust enrichment; and any and all derivative claims relating to unpaid wages or minimum wage compensation against the Released Parties. The Settlement Claims Administrator will include in the envelope containing the check to each Opt-in Plaintiff, and as part of the Settlement Notice, the language of this release provision along with an explanation that each Opt-in Plaintiff is bound by the terms of this Agreement, and specify the Release of Claims provision set forth below. The Settlement Claims Administrator will print release language on the back of the check in a form approved by Plaintiffs' and Defendant's Counsel. All Settlement Checks mailed to Named Plaintiffs and Opt-in Plaintiffs shall contain, on the back of the check, the following limited endorsement:

> **FINAL RELEASE OF CLAIMS:**
>
> By accepting this payment, I waive any right to bring suit for wage and hour claims related to allegedly unpaid or under-paid reimbursement for vehicle expenses under the Fair Labor Standards Act and any applicable state wage and hour law from January 25, 2015 through [DATE SETTLEMENT AGREEMENT SIGNED] arising for my employment at Jason's Deli. I agree that by accepting this payment, I have settled my claims for any unpaid wages, liquidated damages, interest, and associated fees and penalties from January 25, 2015 through [DATE SETTLEMENT AGREEMENT SIGNED] with Jason's Deli.

(B) **Release by Named Plaintiffs.** By signing this Agreement, Named Plaintiffs waive, release, and forever discharge Defendant and the other Released Parties from any and all claims, whether known or unknown, that Named Plaintiffs may have or that any person or entity claiming through Named Plaintiffs may have or claim to have against Defendant and the other Released Parties as of the date of this Agreement, including, but not limited to, any wage and hour claims under federal or applicable state or local law that accrued during Named Plaintiffs' employment with Defendant. Named Plaintiffs shall sign a separate general release agreement in the form attached as Exhibit A hereto. This release shall not become effective until this

11

Agreement is approved by the Court, whether in its current form or as amended to satisfy the Court. In the event that the Court denies Named Plaintiffs' requests for a Service Award, then this paragraph will be void and Named Plaintiffs shall only release claims pursuant to 4.1(A) of this Agreement.

4.2 **Release of Fees and Costs.** Plaintiffs' Counsel and Named Plaintiffs, on behalf of Opt-in Plaintiffs, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they have or may have against Defendant for attorneys' fees, costs, or expenses associated with this Litigation, including but not limited to those attorneys' fees and costs, or expenses associated with Plaintiffs' Counsel's representation of Named Plaintiffs and Opt-in Plaintiffs in this Litigation. Plaintiffs' Counsel further understand and agree that any fee and costs payments provided for herein will be the full, final, and complete payment of all attorneys' fees, costs, expenses associated with Plaintiffs' Counsel's representation of these persons in Litigation, including any costs associated with the disbursement of the Settlement Amount.

5. **NON-DISCLOSURE AND PUBLICITY**

5.1 **Confidentiality of Settlement Agreement Prior to Submission to Court.** Prior to submission of the Agreement to the Court for final approval, the Parties and their counsel will keep the terms, conditions, and existence of the settlement and this Agreement strictly confidential, and will not contact, or comment to, the media about the settlement or this Agreement, or disclose, make known, discuss or relay orally or in writing, electronically or otherwise, the existence of terms of the settlement or this Agreement, or any information concerning or discussions leading up to the settlement or this Agreement. However, nothing herein shall interfere or restrict Plaintiff's Counsel from fulfilling their professional duties to the Opt-in Plaintiffs.

5.2 **Public Comments Regarding Settlement Agreement After Submission to Court.** After submission to the Court of the Motion for Approval, neither Named Plaintiffs or Defendant, nor counsel to any Party, may make any public comment, make or have any communications to or with the press or media, or may any form of advertising or public announcement, utilize any form of social media or website, or issue any press release or media release, regarding the terms of this Agreement, except that Counsel may state that a settlement has been reached and the settlement amount. Notwithstanding the

foregoing, the Parties shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings a summary of the terms of this Agreement. Nothing in this paragraph prohibits Plaintiffs' Counsel from disclosing their representation in this matter in fee applications, websites, firm bios, or individual bios.

5.3 Nothing in this Agreement shall prohibit Counsel for the Parties from disclosing information concerning this Agreement, to their employees, or their agents to effectuate the terms of this Agreement. Moreover, nothing in this Agreement shall prohibit Defendant from disclosing information concerning this Agreement to their employees or agents to the extent necessary to effectuate the terms of this Agreement or to other individuals who otherwise have a need to know the terms of this Agreement. The Parties may also disclose information concerning this Agreement to their respective counsel and tax, audit, and legal advisors.

5.4 Nothing in this Agreement shall prevent Defendant or Defendant's Counsel from making any necessary, appropriate, or required disclosures to Defendant's regulators, auditors, bankers, and the like, or form complying with their obligations under the law.

5.5 Plaintiffs' Counsel will promptly notify Defendant's Counsel of any third-party legal demand that they disclose information pertinent to the settlement or this Agreement.

6. **INTERPRETATION AND ENFORCEMENT**

6.1 **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

6.2 **Effect of Failure to Grant Approval.** In the event the Court fails to enter an order approving settlement in accordance with this Agreement (except for a modification of the attorneys' fees or Service Award) the Parties shall proceed as follows:

 (A) The Lawsuit will resume unless the Parties jointly agree to: (a) seek reconsideration or appellate review of the decision denying approval of settlement, or (b) attempt to renegotiate the settlement and seek Court approval of the re-negotiated settlement.

 (B) In the event of any reconsideration and/or appellate review is denied, the Parties shall have no further rights or obligations under this Agreement.

6.3 **No Assignment.** Plaintiffs' Counsel and Named Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

6.4 **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the parties shall be deemed merged into this Agreement.

6.5 **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs and all Opt-in Plaintiffs who endorse and cash their Settlement Check, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

6.6 **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

6.7 **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

6.8 **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

6.9 **Blue Penciling.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

6.10 **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Georgia, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

6.11 **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

6.12 **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by any other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

6.13 **When Agreement Becomes Binding; Counterparts.** This Agreement shall become valid and binding upon its complete execution. The parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all parties had signed the same instrument.

6.14 **Facsimile, Electronic and Email Signatures.** Any signature made and transmitted by facsimile, email or other electronic means for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party who transmits the signature page by facsimile or email.

6.15 **References of Disputes to Mediator.** The Parties agree that, in the event of any dispute arising out of the settlement or this Agreement or in the event that the number of late opt-ins prior to the Court's final approval of the settlement exceeds five (5), the Parties shall first make a good faith effort to resolve said issues on their own. If they are unable to resolve the dispute, the Parties will attempt in good faith to resolve any such dispute before the Meditator, Greg Thompson.

**WE AGREE TO THESE TERMS.**

Dated: 12/16/2019

NAMED PLAINTIFF

By: _____
HUTSON GRAHAM

Dated: _____

NAMED PLAINTIFF

By: _____
NIAL BENTON

Dated: _____

DELI MANAGEMNT, INC., d/b/a JASON'S DELI

By: _____

Its: _____

16

6.15  **References of Disputes to Mediator.**  The Parties agree that, in the event of any dispute arising out of the settlement or this Agreement or in the event that the number of late opt-ins prior to the Court's final approval of the settlement exceeds five (5), the Parties shall first make a good faith effort to resolve said issues on their own. If they are unable to resolve the dispute, the Parties will attempt in good faith to resolve any such dispute before the Meditator, Greg Thompson.

**WE AGREE TO THESE TERMS.**

Dated: _____   NAMED PLAINTIFF

By:_____
HUTTON GRAHAM


Dated: 12/16/2019 _____   NAMED PLAINTIFF

*Nial Benton*
By:_____
SignNow e-signature ID: b7cfdf4148
12/16/2019 22:83:21 UTC
NIAL BENTON


Dated:_____   DELI MANAGEMNT, INC., d/b/a JASON'S DELI

By:_____

Its:_____

16

6.15 **References of Disputes to Mediator.** The Parties agree that, in the event of any dispute arising out of the settlement or this Agreement or in the event that the number of late opt-ins prior to the Court's final approval of the settlement exceeds five (5), the Parties shall first make a good faith effort to resolve said issues on their own. If they are unable to resolve the dispute, the Parties will attempt in good faith to resolve any such dispute before the Meditator, Greg Thompson.

**WE AGREE TO THESE TERMS.**

Dated: _____   NAMED PLAINTIFF

By:_____
HUTTON GRAHAM

Dated:_____   NAMED PLAINTIFF

By:_____
NIAL BENTON

Dated:_____   DELI MANAGEMNT, INC., d/b/a JASON'S DELI

By:_____
Its:_____

16